STATE OF CONNECTICUT *v.* DAVID SMITH
(14454)

Dupont, C. J., and O'Connell and Landau, Js.

790

Argued December 6, 1995—decision released April 2, 1996

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Joan E. Alexander* and *Edward R. Narus*, assistant state's attorneys, for the appellant (state).

*Hope C. Seeley*, with whom, on the brief, was *Hubert J. Santos*, for the appellee (defendant).

DUPONT, C. J. The state, with the permission of the trial court pursuant to General Statutes § 54-96,[1] appeals from the trial court's judgment dismissing with preju-

---

[1] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

dice three counts of arson in the first degree in violation of General Statutes §§ 53a-111 and 53a-8 and one count of conspiracy to commit arson in the first degree in violation of General Statutes §§ 53a-48 and 53a-111.

Prior to the dismissal, the trial court granted the defendant's "motion in limine to exclude testimony" of the private insurance investigators who had conducted a cause and origin investigation of the fire that had destroyed the defendant's business premises. Although the defendant's motion referred to "testimony," the trial court's decision limited the scope of the suppression to "any/all testimony, photographs, tests and/or videos of the defendants premises. All photographs, or videos or tests of the exterior of the mall or general areas such as roof and the other business premises are not suppressed. All conclusions of the investigators as to cause and origin of the fire that are based upon information, photographs, videos or tests from the business premises of the defendant are suppressed."

The sole issue in this appeal is whether the trial court properly held that the entry by private insurance investigators onto the defendant's business premises, without a search warrant and allegedly without his consent,[2] violated his constitutional rights. Contrary to the trial court's decision, we conclude that under the circumstances of this case, the private investigators who conducted cause and origin investigations on behalf of the insurance companies involved were not agents of the

[2] The state also argued on appeal that the trial court committed plain error by the suppression of the report of the investigator for the defendant's insurance company. The state claimed that the defendant, by virtue of his insurance contract with the company, had consented to an inspection of his burned-out premises. In view of our holding that the insurance investigators were not agents of the state, we need not reach this issue. We also do not reach the issue, raised by the state to the trial court, of whether the defendant had also consented to the search by the investigator working for the defendant's lessor's insurer, by virtue of the defendant's lease with the lessor.

state, and, as such, their entry onto the defendant's business premises did not constitute an illegal search under the fourth amendment to the United States constitution and article first, § 7, of the constitution of Connecticut.[3] We, therefore, reverse the judgment of the trial court.

The fourth amendment[4] protects persons from unreasonable searches and seizures by the federal government; *Coolidge* v. *New Hampshire*, 403 U.S. 443, 488, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); and is made applicable to state action through the fourteenth amendment. *Camara* v. *Municipal Court of San Francisco*, 387 U.S. 523, 528, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). Fourth amendment constitutional guarantees against unreasonable searches and seizures apply, however, only to governmental action and do not apply to action by private citizens acting in their private capacity. *Burdeau* v. *McDowell*, 256 U.S. 465, 475, 41 S. Ct. 574, 65 L. Ed. 1048 (1921). "[A] wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and . . . such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully." *Walter* v. *United States*, 447 U.S. 649, 656, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980). An exception, however, to the general rule that the fourth amendment does not protect against searches by private persons is that the fourth amendment may be invoked where a private person, in light

---

[3] The defendant, the state and the trial court in its memorandum of decision do not rely on the Connecticut constitution for any analysis. We, therefore, limit our discussion of this matter to the federal guarantee. See *State* v. *Joly*, 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991).

[4] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

of all circumstances of the case, is acting as the agent or instrument of the state. *Coolidge* v. *New Hampshire*, supra, 487.

The state claims that the trial court improperly concluded (1) that an agency relationship arose by operation of law as a result of the reporting requirements of General Statutes § 38a-318, and (2) that the facts support a finding of an agency relationship between state officials and the private insurance investigators.[5]

To address the state's claims, we must first discuss the procedural history and the facts of this case. On April 27, 1991, Video Galaxy, a video rental store owned by the defendant, and other commercial establishments located in a one story mini mall structure known as Waz's Plaza, were destroyed by fire. Due to the nature of the fire, members of the state fire marshal's office were assigned to investigate the cause and origin of the fire. The defendant and the owners of the other commercial establishments affected by the fire consented to a search of their business premises by the state fire marshal's office and members of that office conducted an investigation from April 27 through April 29, 1991.

Subsequent to the investigation, many of the insurance companies that insured the commercial establishments at Waz's Plaza contracted with or assigned private investigators to investigate the origin and cause of the fire. The reports of the private investigators revealed that each of the investigators went to the fire scene and inspected not only the commercial establishments that were insured by each investigator's respective insurance employer, but also the other commercial

---

[5] The defendant states the issues as follows: (1) whether the trial court's determination of agency was legally and logically correct; and (2) whether the trial court's finding that an agency relationship existed was clearly erroneous.

establishments located at Waz's Plaza, including that of the defendant. The reports also reveal that the investigators took numerous photographs and videos and, in one case, removed samples from the defendant's premises for testing. None of the reports, however, indicates that any of the investigators asked for permission from the defendant to enter his premises.

On May 28, 1991, the state fire marshal's office issued its report on the origin and cause of the fire and concluded that the fire originated on the defendant's premises and was caused by arson. The trial court found that none of that report's conclusions or findings of fact came from the reports of the private investigators.[6] The trial court also found that the reports of the investigators were not prepared on behalf of the government and that there was no intent on the part of the investigators to engage in a search or seizure.

Some time after it had issued its report, the state fire marshal's office, in accordance with General Statutes § 38a-318,[7] requested copies of the investigative reports

---

[6] The trial court noted that the state fire marshal's report contained information from one of the private investigators, Thomas Haynes, concerning his electrical inspection of Video Galaxy. The trial court concluded, however, that that information was cumulative and came from conversation, not from the report prepared by Haynes.

[7] General Statutes § 38a-318 (formerly § 38-114h) provides in relevant part: "Information to be furnished relative to fire losses. Limitation on liability. Confidentiality of information. Testimony concerning information given authorized agencies. (a) Any authorized agency may in writing request any insurance company to release information relative to any investigation it has made concerning a loss or potential loss due to fire of suspicious or incendiary origin which shall include but not be limited to: (1) An insurance policy relative to such loss, (2) policy premium records, (3) history of previous claims, and (4) other relevant material relating to such loss or potential loss.

"(b) If any insurance company has reason to suspect that a fire loss to its insured's real or personal property was caused by incendiary means, the company shall furnish any authorized agency with all relevant material acquired during its investigation of the fire loss, cooperate with and take such action as may be requested of it by the authorized agency and permit

prepared by the private investigators on behalf of the insurance companies. The insurance companies turned over the reports that they had received from their respective investigators, with the exception of the report prepared by Thomas Haynes for the defendant's insurance carrier.[8]

The defendant claims that the actions of the private investigators who entered the defendant's business premises constituted state action conducted without the consent of the defendant and without search warrants. The defendant argues, therefore, that the entry and gathering of evidence constituted an illegal search and seizure in violation of the fourth and fourteenth amendments to the United States constitution.

The trial court conducted a hearing on the defendant's motion. The defendant presented the testimony of Detective Julio Fernandez and Sergeant James But-

any person ordered by a court to inspect any of its records pertaining to the policy and the loss. Such insurance company may request any authorized agency to release information relative to any investigation it has made concerning any such fire loss of suspicious or incendiary origin.

"(c) No insurance company, authorized agency or person who furnished information on behalf of such company or agency, shall be liable for damages in a civil action or subject to criminal prosecution for any oral or written statement made or any other action taken that is necessary to supply information requested pursuant to this section, unless there is fraud, actual malice or conduct relating to the release of such information which constitutes a criminal act.

\* \* \*

"(f) For the purposes of this section, 'authorized agency' means: (1) The state fire marshal or the local fire marshal when authorized or charged with the investigation of fires at the place where the fire actually took place; (2) the insurance commissioner. . . ."

[8] The state fire marshal's office was aware that Haynes had prepared a written report and that he had submitted the report to the defendant's insurance carrier, but, according to Sergeant James Butterworth of the state fire marshal's office, the defendant's insurance carrier refused to turn over its report to the state because it claimed that it had not requested Haynes to prepare a report. Thus, the state never received Haynes' report under the auspices of § 38a-318.

terworth of the state fire marshal's office and that of Haynes. Additionally, the following documents were admitted as court exhibits: (1) the state fire marshal's report and its formal request for information addressed to the defendant's insurance carrier; (2) the letter sent by the state fire marshal to the defendant's insurance carrier requesting materials; (3) the reports prepared by each of the private investigators; (4) Haynes' file and notes; and (5) the lease between the defendant and his lessor, Plymouth Commons Realty Corporation.

The trial court, in a written memorandum of decision, concluded that "the private investigators are agents of the state of Connecticut and as such their entry onto the defendant's business premises without his consent constituted an illegal search under the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution." Following the trial court's decision to grant the motion in limine and to suppress the evidence compiled by the private investigators, the state moved to dismiss the charges with prejudice pursuant to General Statutes § 54-56,[9] and moved for permission to appeal pursuant to General Statutes § 54-96. Over the defendant's objections, the trial court granted both of the state's oral motions. This appeal followed.

The trial court based its finding of an agency relationship on the ramifications of § 38a-318 and *State* v. *Zar-*

[9] General Statutes § 54-56 provides: "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, *upon motion by the defendant,* dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial." (Emphasis added.) We note that this statute authorizes a trial court to dismiss charges upon motion of the defendant. Even though it was the state that moved to dismiss the charges with prejudice, the trial court had authority to grant that motion. *State* v. *Ross,* 189 Conn. 42, 454 A.2d 266 (1983).

*ick*, 227 Conn. 207, 630 A.2d 565, cert. denied, 510 U.S. 1025, 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993). In *Zarick*, the defendant claimed that certain photographs given to police in Massachusetts by a commercial film developing laboratory to which the film had been sent by the defendant were illegally seized because the film developing laboratory was an agent of the state. The Supreme Court affirmed the trial court's finding that the film developing laboratory was not an agent of the state and that the photographs did not improperly come into the possession of the Massachusetts police. Id., 228.

As noted by the trial court in the present case, the evidence in *Zarick* that served to support the trial court's finding that there was no agency included the facts that (1) the policy of turning over questionable photographs to the police was initiated by the film developing company, (2) the decision to turn over specific photographs was entirely up to the company, (3) there was no supervision or random checking of the company by the police in connection with this policy, and (4) there were no instructions or rules regarding such policy promulgated by the police. Id., 227–28.

Relying on *Zarick*, the trial court concluded that "the policy of turning over the insurance reports is statutorily authorized and that the insurance company is mandatorily required to turn the reports over; that it is logical that the state police would want to see the reports rendered by the private investigators and would monitor whether there were investigators on the scene and would professionally request the reports to round out their own investigation; and that . . . § 38a-318 is a statute legislatively enacted with its intended consequences."[10]

---

[10] The trial court heard testimony from Butterworth that it is a standard practice for the state fire marshal's office to write to insurance companies in order to get their reports of fire scene investigations and that if a case is going to proceed to arrest, these reports, as a matter of policy, are

None of the Connecticut cases involving the question of the existence of an agency relationship between a private person and the state in determining whether the fourth amendment prohibitions apply to the behavior of a private person involves a statute. It is also a case of first impression as to whether § 38a-318 creates an agency relationship between the state and insurance companies.

## I

## AGENCY BY OPERATION OF LAW

The state's first claim is that the trial court should not have concluded that an agency relationship arose as a matter of law by operation of the reporting requirements of § 38a-318.[11]

The state argues that the trial court's decision focuses on the reporting requirements of § 38a-318 and the fact that state fire officials requested and received copies of the reports of the private investigators pursuant to statute. The state, therefore, asserts in its brief that the trial court determined that the agency relationship arose by operation of law based on the reporting requirements of § 38a-318.

An agency relationship can arise by operation of law if a statute, rather than a contract or acts of the parties, creates the relationship. See Ballentine's Law Dictionary (3d Ed. 1969). The question that we must resolve is whether § 38a-318 creates an agency relationship between the insurance investigators and the police or fire marshal. Although agency is ordinarily a question of fact, it becomes a matter of law when a statute

incorporated as part of the state fire marshal's file, and are then submitted to the state's attorney's office.

[11] The trial court did not explicitly conclude that an agency relationship existed because § 38a-318 created such a relationship, but did primarily rely on the statute to conclude that the investigators were agents of the state.

permits a finding of the relationship. *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 184–85, 544 A.2d 1185 (1988).

An agency relationship exists if (1) there is a manifestation by a principal that a person is acting for that principal, (2) there is acceptance by an agent of the relationship, and (3) there is an understanding that the principal is in control of the acts of the agent. *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 240, 654 A.2d 342 (1995); *Hall* v. *Peacock Fixture & Electric Co.*, 193 Conn. 290, 294, 474 A.2d 1100 (1984). If § 38a-318 establishes each of these elements of agency, an agency relationship exists by operaton of law. *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 184–85. We must, therefore, review the statute to determine if it establishes an agency relationship between the state and private insurance investigators, thus implicating the fourth amendment.

The language of § 38a-318 does not require private insurance investigators to act for the state or to conduct an investigation in any particular way, or require insurance carriers to initiate a report for every fire for which a claim is made or to initiate a report whenever they deem that they may not be liable to a policy holder because arson may be involved. There is also no indication in the statute that private insurance investigators have accepted such an undertaking. Lastly, the statute does not provide or even allude to any understanding between the state and private insurance investigators that the state would exercise any degree of control over private insurance investigators in their execution of cause and origin inspections. Although § 38a-318 permits the state fire marshal to request and to receive relevant material acquired by private insurance investigators when investigating a loss due to a fire of suspicious or incendiary origin, it does not coerce or require the investigators to take any particular action.

State action can exist by legislative fiat only when the legislation confers on private parties a power that traditionally belongs to the government and grants coercive power or provides significant overt or covert encouragement to private parties to engage in a particular act. *San Francisco Arts & Athletics, Inc.* v. *United States Olympic Committee*, 483 U.S. 522, 542, 113 S. Ct. 1799, 123 L. Ed. 2d 554 (1986); *Alliance for Community Media* v. *Federal Communications Commissions*, 56 F.3d 105, 116 (D.C. Cir. 1995). We conclude that § 38a-318 falls far short of establishing an agency relationship by operation of law.

## II

## AGENCY AS A QUESTION OF FACT

Because we have concluded that the statutory scheme of § 38a-318 does not establish an agency relationship, we must next resolve whether that relationship is established in light of all of the factors in the case, including the factor of the action required of insurance companies by the statute. See *Connecticut Air Service, Inc.* v. *Danbury Aviation Commission*, 211 Conn. 690, 561 A.2d 120 (1989). The state claims that the trial court's finding of an agency relationship between state officials and private citizens is not supported by the subsidiary facts.

"A factual finding may be rejected by this court only if it is 'clearly erroneous.' " *Kaplan* v. *Kaplan*, 186 Conn. 387, 392, 411 A.2d 629 (1982), quoting Practice Book § 3060D (now § 4061). Practice Book § 4061 provides that we may reverse or modify the decision of the trial court if we determine "that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law." To test whether a finding is clearly erroneous, we determine whether there is evidence to support the finding. If there is not, the finding is clearly

erroneous. *Metropolitan District* v. *Housing Authority*, 12 Conn. App. 499, 510–11, 531 A.2d 194, cert. denied, 205 Conn. 814, 533 A.2d 568 (1987). If the trial court's conclusions or findings of fact rest on speculation rather than on sufficient evidence, they are clearly erroneous. *Williams* v. *Campanaro Construction Co.*, 20 Conn. App. 709, 711–13, 570 A.2d 228 (1990).

The ultimate finding that an agency exists usually turns on factual questions, which, in the context of a motion to suppress, where the claim is that a private individual is acting for the state, requires scrupulous appellate examination of the record to determine whether that factual finding is supported by substantial evidence. *State* v. *Alexander*, 197 Conn. 180, 185, 496 A.2d 486 (1985). We must review the facts found on a clearly erroneous standard and then review de novo the court's ultimate application of the law to those facts. *United States* v. *Garlock*, 19 F.3d 441, 442 (8th Cir. 1994).

As noted by our Supreme Court, "[t]here is no bright line test for determining when a private citizen is acting as an agent of the police." *State* v. *Alexander,* supra, 197 Conn. 183, citing *Thomas* v. *Cox*, 708 F.2d 132, 136 (4th Cir.), cert. denied, 464 U.S. 918, 104 S. Ct. 284, 78 L. Ed. 2d 262 (1983). We must determine whether, in light of all the circumstances, the private insurance investigators acted as an instrument or agent of the state. See *Skinner* v. *Railway Labor Executives' Assn.*, 489 U.S. 602, 614, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989). In making this determination, "we consider whether private citizens are performing a function akin to a governmental function such as criminal investigation and whether they are acting on the order, instruction, or request of a government officer." *State* v. *Lee*, 32 Conn. App. 84, 93, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993), cert. denied, 510 U.S. 1202, 114 S. Ct. 1319, 127 L. Ed. 2d 668 (1994).

Some of the factors that determine whether an agency has been created have been delineated by both federal and state decisions. These considerations include the subsidiary facts of who or what initiated the action by the private individual, who decides whether the fruit of the action is to be given to the state, who determined the way in which the action was to be conducted; *United States* v. *Garlock*, supra, 19 F.3d 443–44; *State* v. *Zarick*, supra, 227 Conn. 227–28; the extent of the contact between the state and the individual and whether the individual receives a monetary or other form of inducement from the government; *State* v. *Alexander*, supra, 197 Conn. 187; whether the government had prior knowledge that the individual would act as she or he did; *Burdeau* v. *McDowell*, supra, 256 U.S. 475; whether the primary purpose of the state and the actor was the same; *California* v. *Mangiefico*, 25 Cal. App. 3d 1041, 1048, 102 Cal. Rptr. 449 (1972); whether a statute mandates the private action; *Skinner* v. *Railway Labor Executives' Assn.*, supra, 489 U.S. 614–15; whether the purpose of the individual was to benefit the government; *United States* v. *Attson*, 900 F.2d 1427, 1432–33 (9th Cir.), cert. denied, 498 U.S. 961, 111 S. Ct. 393, 112 L. Ed. 2d 403 (1990); whether the government's role was active or passive; *Skinner* v. *Railway Labor Executives' Assn.*, supra, 615; whether the government exercised coercive means and whether the act involved a power that was the exclusive prerogative of the government; *United States* v. *Garlock*, supra, 443–44; and whether at the time of the act the private citizen was engaged in assisting the government in its public purpose. *United States* v. *McAllister*, 18 F.3d 1412, 1418 (7th Cir. 1994). All of these factors relate to the three ingredients of agency, namely, whether there is a manifestation by the principal-government that the agent-individual is acting for the government, whether the agent-individual has accepted the relationship and whether the principal-

government and the agent-individual understand that the government is in control of the acts of the individual.

The record here is devoid of any evidence that shows that the state coerced, encouraged, suggested or initiated the cause and origin inspections performed by the private insurance investigators. To the contrary, the trial court found that the private insurance investigators' investigations were conducted at the behest of insurance companies that insured the commercial establishments at Waz's Plaza. There is also no evidence that the government exercised any degree of control over the private insurance investigators when they conducted their inspections. The fact that the state fire marshal's office and the private insurance investigators were all engaged in cause and origin investigations does not create the required nexus to establish that the private insurance investigators "acted as . . . instrument[s] or agent[s] of the Government." *Skinner* v. *Railway Labor Executives' Assn.*, supra, 489 U.S. 614.

In this case, the purpose of the state was to determine if there was sufficient evidence for criminal prosecution, and the purpose of the private insurance companies, through their investigators, was primarily to determine the liability of their companies for insurance claims. Included in the latter determination are subsidiary determinations of whether there was arson by someone other than their policyholders, and whether there might be rights of subrogation. Insurance companies also have the purpose of gathering information useful in the future investigation of other fires. The purposes of the state and the private insurance investigators were, therefore, different because the insurance investigators had a legitimate independent motive to investigate. Although § 38a-318 may require insurance companies to turn over their investigative reports to

the state, the statute does not mandate that there be any investigation conducted at all. Cf. id., 614–15.

The trial court found that the policy of turning over the insurance reports was authorized by statute and that the requirement of providing them to the state was mandated by the statute. As previously discussed, although those findings are not erroneous, the ultimate finding that an agency relationship therefore arose cannot be supported by those facts. The trial court also rested its conclusion of agency on its finding that it is logical that the state police would want to see the reports and would monitor whether there were investigators on the scene and would request the reports to round out the police investigations. There is no evidence to support whether the state police "would monitor whether there were investigators on the scene." Although there was evidence that it is standard practice for the state fire marshal's office to obtain insurance reports, and that, if an arrest resulted from the state's investigation, the insurance reports would be provided to the state's attorney's office, neither of those practices relates to whether an agency relationship existed at the time the insurance reports were made or at the time the private investigations occurred.

We conclude that the entry onto the defendant's business premises was private in nature and was not attributable to the state. Therefore, fourth amendment constitutional guarantees do not apply.

The judgment is reversed and the case is remanded with direction to reinstate the case on the docket of the court and to deny the motion in limine.

In this opinion the other judges concurred.