[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION:
FACTS:
The defendant was arrested by warrant on October 3, 1997, following a motor vehicle accident that occurred when, on June 19, 1997, he was driving northbound in the southbound lane of Kent Road in New Milford, Connecticut, and collided head-on with a southbound vehicle. He was charged with operating while under the influence, assault in the second degree with a motor vehicle, and passing in a no-passing zone. Physically injured in the accident, Mr. Kopp was taken by ambulance to the emergency room of the New Milford Hospital where he presented with neck pain, facial abrasions and swelling, bleeding from the mouth, and dental trauma. Within fifteen (15) minutes of his arrival, the defendant walked out of the treatment room and left the hospital before his medical evaluation or treatment had been completed. The hospital notified the police a patient had left against medical advice and asked their assistance in returning the defendant. Sgt. Larry Ash of the New Milford Police Department responded first and Officer Wheeler arrived soon thereafter. Ash testified he told Mr. Kopp to go back inside and permit the doctors to do what they had to do and that he would then be free to leave. The defendant agreed and walked back into the hospital CT Page 5625 unrestrained but with both officers. Dr. Goccia completed the examination and ordered diagnostic tests to include x-rays and blood work. Both he and a nurse testified the blood tests were ordered for medical reasons as opposed to a police request. Specifically, Dr. Goccia testified he ordered the tests so that he could make a diagnosis and plan appropriate treatment. Mr. Kopp consented to the testing of his blood alcohol level. Approximately twenty-five (25) minutes after the blood was drawn, another police officer requested the defendant submit to a separate blood test the police wanted to send out for an independent analysis. Though he at first agreed, the defendant later withdrew his consent and the officers left the hospital. The second test was never performed.
As part of their investigation of the accident, the New Milford police sought and obtained a search warrant for the defendant's medical records of treatment in the emergency room on the night of the accident. Those records disclosed the defendant's blood alcohol level was .314 and, thus, his subsequent arrest for OUI.
On March 17, 1998, the defendant filed a motion to suppress the blood test evidence obtained as a result of the search and seizure warrant. He argues that evidence was obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article First § 7 of this state's constitution. Specifically, he claims he was subjected to a search without a search warrant pursuant to C.G.S. § 54-33a, that he was unlawfully detained by the police and, as a result, was subjected to a search and seizure that eventuated in medical records produced via warrant and now being used to prosecute his case — all without his consent or waiver and in violation of C.G.S. §§ 14-227a(c) and 14-227a(m).[1]
Hearings on the defendant's motion were held on July 17, 1998, September 30, 1998, and October 19, 1998.
LAW AND ARGUMENT
The fourth amendment to the federal constitution, made applicable to the states through the due process clause of thefourteenth amendment, provides in relevant part the right of people to be secure in their person and effects against unreasonable searches and seizures shall not be violated. Statev. Wilkins, 240 Conn. 489, 495 (1997); State v. Floyd, CT Page 5626217 Conn. 73, 79-80 (1991). Evidence which is the product of an illegal seizure or detention of a person is subject to suppression. Statev. James, 237 Conn. 390, 404 (1996), citing State v. Greenfield,228 Conn. 62, 67 (1993); Brown v. Illinois, 422 U.S. 590 (1975);Wong Sun v. United States 371 U.S. 471 (1963). In determining the threshold question whether there has been a seizure, examination of the police conduct at the time of the alleged seizure requires application of an objective standard. State v. James, supra. Under our state constitution, a person is seized only if, in view of all other surrounding circumstances, a reasonable person would have believed he was not free to leave. Id., citing State v.Oquendo, 223 Conn. 635, 647 (1992); United States v. Mendenhall,446 U.S. 544, 553-54, reh. denied, 448 U.S. 908 (1980). Under the federal constitution, a seizure occurs only if there is a show of "physical force . . . or . . . submission to the assertion of authority." State v. James, supra, at 404-05, citing Californiav. Hodari, 449 U.S. 621, 626 (1991).
A seizure does not, however, occur when an individual fully chooses to enter into or continue an encounter with police and there is no constitutional prohibition preventing police officers from approaching a person or inquiring whether he is willing to answer questions or to asking someone questions if that person is willing to listen. Op. cit., at 405. See also State v. Brown,199 Conn. 47, 52-53 (1986); State v. Damon, 214 Conn. 146,153-54 (1986). Factors to be considered in determining the consensual nature of a particular encounter are the time, place, and purpose of the contact as well as the officer's words, tone of voice, and general demeanor. Also to be considered are the officer's statements to others present, his responses to questions posed by the defendant, and whether the officer has expressed an intention to detain the accused. State v. James, supra, at 405.
The defendant's brief makes clear the "seizure" of which he complains is the detention of him outside the hospital. See p. 9 of Memorandum of Law in Support of Defendant's Motion to Suppress dated February 17, 1999. The defendant argues there was an unlawful detention because: a) Dr. Goccia's emergency room report stated Mr. Kopp was in the "custody" of police when he returned to the emergency room, and b) Sgt. Ash testified Mr. Kopp was not free to leave after being stopped outside the hospital. See Page 10 of the defendant's memorandum. The first argument is to give legal effect to a term used by a layperson (as Dr. Goccia must be considered) and further to ignore that, when queried as to why he CT Page 5627 described Mr. Kopp as being in the "custody" of the police, he responded, "I think that's a misnomer, I mean, just the fact that he was accompanied by the police officers when he returned. I think I used those interchangeable. I think custody is more of a legal description than a medical description. So, maybe accompanied would have been a better term for that sentence." (Tr. 7/17/98 — p. 19). Additionally, it is not precisely so that Sgt. Ash testified that, at such time as the officers spoke to Kopp outside the emergency room, Kopp was then not free to leave. The following exchange occurred between Sgt. Ash and defense counsel:
 Q Was Mr. Kopp free to just leave if he just wanted to at that point? I mean, if he continues to walk away, would you have said, "Fine, see yeah?"
A No.
Q You would have stopped him?
A I would have asked him to wait.
Q And when you brought him back into the emergency room?
 A I would have asked him to wait until I could speak to a doctor, specifically.
Q Would you have brought him back into the emergency room?
A I don't know if that would have been necessary.
The colloquy does not establish a detention since, even had the defendant not agreed to return, all the officer testified to is that he would have asked him to wait while the officer returned inside to speak to the attending physician. The fact the officers were in uniform and carried sidearms as required does not elevate this contact to an investigatory detention. Nothing in the officer's words or demeanor suggested other than an information gathering consensual stop. Absent was a show of authority, a command to stop, a display of weapons, use of physical restraint, or an attempt to arrest. The only conversation was with regard to the need for medical treatment. Application of an objective standard to these circumstances does not suggest a reasonable person in the defendant's position would have concluded he was not free to leave and, thus, there was not CT Page 5628 a seizure under either our state or federal constitution.
Although the defendant's brief makes clear the alleged unlawful detention is the police officer's conduct as above described, much is also made therein of the police interest in Mr. Kopp's undergoing a second blood test so that an independent analysis could be performed. The mere making of that request does not constitute a search and seizure so as to require either a finding of probable cause and a warrant or, alternatively, the defendant's consent or waiver. There is no constitutional prohibition preventing police officers from approaching a person to ask questions if that person is willing to listen. State v.James, 237 Conn. 390, 405 (1996). The uncontradicted evidence in the instant case established: a) the blood drawn was at the order of the treating physician and solely for medical reasons; b) the defendant consented to that procedure; and c) when the defendant determined he did not wish to undergo a second test and told the officer that, the officer left the hospital. The police did not request the doctor to draw the blood nor was there any evidence to support a finding the doctor was acting as an agent of the government in ordering various diagnostic tests to include a blood test. The fourth amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by government officers or those acting at their direction.Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 614
(1989). It does not apply to a search and seizure, even an arbitrary one, effected by a private party on his own initiative. Id. Such private action does not deprive the government of the right to use evidence it has lawfully acquired. State v. Smith,40 Conn. App. 789, 792 (1996), citing Walter v. United States,447 U.S. 649, 656 (1980).
More than two (2) months after the defendant was treated at New Milford Hospital, a judge found there was probable cause to seize the medical records and there is therefore no impediment to the state's use of those records in the prosecution of this case.
The motion to suppress is denied.
SHEEDY, J.