[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION Re: Motion to Suppress
The state has charged the defendant with two counts of sexual assault in the first degree, two counts of risk of injury to a minor and two counts of promoting a minor in an obscene performance. The defendant was also charged in the United States District Court in a seven count indictment with receiving and possessing child pornography.
The defendant has moved to suppress evidence that was the result of the execution of a search warrant by law enforcement officials at the defendant's residence and offices located at Saybrook College, 90 High Street, New Haven, Connecticut. The defendant claims that the search warrant was obtained in violation of his rights pursuant to theFourth
Amendment to the United States Constitution and Article First, Section Seven of the Connecticut State Constitution. The defendant also claims that the search exceeded the scope of the warrant and therefore any items seized in a portion of the premises should be suppressed.
The court held an evidentiary hearing in connection with the defendant's motion to suppress and makes the following findings of fact.
In October and November of 1998, the defendant was a professor at Yale University in the Department of Geology and Geophysics and was also the Master of Saybrook College. As Master of Saybrook College he was provided with residential quarters and offices at 90 High Street which also included the use of a computer. The defendant also had an office at the department in which he had a computer.
During that time period Mr. Paul Gluhosky was a research assistant in the Department and also had certain responsibilities concerning the computer system in the Department.
On October 23, 1998 a graduate student brought to the attention of Mr. CT Page 37 Gluhosky that the defendant was downloading child pornography into his computer. The graduate student advised Gluhosky that he had viewed some of the files that had been downloaded by the defendant into his directory. This graduate student had access to the defendant's directory without going to the defendant's computer. The graduate student told Gluhosky that a second graduate student had also observed the same thing. Neither graduate student brought their observations to any representative of law enforcement.
The files that were contained in the defendant's computer were accessible to anyone who had a password and thus was an authorized user of the system known as the UNIX system. A user of the UNIX system could block access to his files on the system by executing various commands which could "write protect" or "read protect" the files. If a file was read protected" it could not be viewed by other users in the UNIX system. The files in the defendant's computer were not marked "read protect" although they could have been. Thus anyone with access to the UNIX system could view the defendant's files with an image viewer.
In order to verify what was being told to him, on October 23, 1998, Gluhosky created a program that would send him an e-mail when any new files were added to the directory in the defendant's computer. Gluhosky had looked into the defendant's directory from a computer in his office. There was no official or written policy at Yale regarding access to the directories of another user.
On October 23, 1998 Gluhosky learned that image files had been opened and added to the defendant's directory through the use of an image viewer he looked at the images which he determined to be child pornography. He determined that the defendant was in his office with the door closed at the time. Gluhosky did not bring his findings to anyone connected with law enforcement at that time.
For a number of days following October 23, 1998, Gluhosky continued to monitor the defendant's activities with respect to his computer to verify what he was seeing and to ensure that the defendant was in his office at those times. He concluded that the files being downloaded to the defendant's computer contained child pornography.
On October 30, 1998, Gluhosky brought his findings to the attention of Professor Ron Smith. Smith instructed Gluhosky to continue to monitor the situation and to keep track of what the defendant was downloading. Gluhosky saved some of this information as files on his computer.
During this period Gluhosky also determined that the child pornography which was being downloaded to the defendant's computer in his office were CT Page 38 then being downloaded to a personal computer in the Master's quarters at Saybrook College and deleted from the computer in the defendant's department.
At this point, none of Gluhosky's findings had been brought to the attention of law enforcement. Gluhosky acquired additional information on October 31, 1998 and November 1, 1998 and met with Professor Smith on November 2, 1998 in order to discuss a plan of action. Smith decided to go to Yale's legal counsel. At that point, Smith advised Gluhosky to discontinue his activities. Gluhosky continued, however, out of curiosity.
On November 2, 1998 Lt. Kozak of the Yale Police Department was called by the Chief and advised of the situation and told to contact Professor Smith. November 2, 1998 was therefore the first involvement of law enforcement in the investigation of the defendant. Kozak met with Smith on the morning of November 3, 1998 and later with Paul Gluhosky, along with Detective Rainville of the Yale Police Department.
Gluhosky advised Kozak and Rainville of his findings and brought with him hard copy of the material which he had obtained including logs showing the connection between the computer in the defendant's office and the computer in the Master's residence at Saybrook College. Gluhosky had a second meeting with Kozak and Rainville which he brought more hard copy.
Paul Gluhosky also provided the Yale Police with two compact discs during his meeting with them which disclosure was not viewed by the Yale police in his presence. Gluhosky was never given any instructions by the Yale police to continue with his monitoring activities. The first compact disc was given to the Yale police on November 3, 1998 and the second on November 5, 1998. Both however, contained material that had been obtained by Gluhosky prior to November 2, 1998.
Gluhosky continued his monitoring activities on November 4, 1998 and November 5, 1998 for his own curiosity but did not save any materials from those activities or turn anything over to the police as a result of that monitoring.
In the evening of November 4, 1998 Gluhosky spoke by telephone with Agent Tutty of the FBI and told her what he had told the Yale Police Department. Tutty gave him no instructions at that time other than to do nothing further. Gluhosky did not advise her that he was continuing to monitor the defendant's activities.
Agent Tutty had met with Lt. Kozak and Detective Rainville on November CT Page 39 3, 1998 and had been shown the material obtained by them from Paul Gluhosky. They also advised her based upon the information obtained by Gluhosky that they believed that the defendant may be responsible for the downloading of the material in question.
Agent Tutty had no further contact with Gluhosky prior to November 6, 1998 when the search warrant was executed. He provided no further information prior to the drafting of the search warrant affidavit and execution of the warrant.
The search warrant described the areas to be searched as "Residential quarters and office of the Master of Saybrook College, Yale University, located at 90 High Street, New Haven, Connecticut. The warrant was executed on November 6, 1998 and Agent Tutty was a member of the search team.
Agent Tutty conducted an interview of the defendant who was cooperative with her and brought them to an area designated as KL on the floor plan of 90 High Street (State's Exhibit 1). KL were designated as part of the search area. The defendant pointed out his computer and computer material which was located in area L. This area also contained robes belonging to the defendant which were in a closet.
According to the records of the Office of Facilities for Yale University, areas KL are part of Saybrook College. This area designated as #218 in the records of Yale was moved from Branford College to Saybrook College on May 8, 1996, two months before the defendant began as Master of Saybrook College. The area designated as KL has the number 1039 on the outside of the door leading to a common hallway.
There was open access to area KL from area M which was a bedroom in Saybrook College. The door leading from M to KL had two sliding bolts and one deadbolt which would be operable to one going from M to KL.
The area of KL had a telephone with the number 436-1039 assigned to it. Ordinarily 436 is assigned to students rather than administration. This is not an ironclad rule. Telecommunications records of Yale University indicate that during the period from September, 1998 through November, 1998 twelve long distance calls were made from 436-1039 using the defendant's PIN and two calls were made from an outside line to 436-1039 using the defendant's calling card.
It is the claim of the defendant that the information obtained by law enforcement officials which formed the basis of the search warrant in question was obtained in violation of his rights under theFourth
Amendment to the United States Constitution and Article First, Section CT Page 40 Seven of the Connecticut State Constitution.
It is the first claim of the defendant that Gluhosky was acting as an agent of law enforcement officials when he gathered the information which he provided to the Yale Police and to the FBI.
"The fourth amendment . . . protects persons from unreasonable searches and seizures by the federal government; Coolidge v. New Hampshire,403 U.S. 443, 488, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); and is made applicable to state action, by the fourteenth amendment. Camara v.Municipal Court of San Francisco, 387 U.S. 523, 528 S.Ct. 1727,18 L.Ed.2d 930 (1967). Fourth Amendment constitutional guarantees against unreasonable searches and seizures apply, however, only to governmental action and do not apply to actions by private citizens acting in their private capacity. Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574,65 L.Ed. 1048 (1921). `[a] wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and . . . such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully.' Walter v. United States, 447 U.S. 649,656, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). An exception, however, to the general rule that the fourth amendment does not protect against searches by private persons is that the fourth amendment may be invoked where a private person, in light of all circumstances of the case, is acting as the agent or instrument of the state. Coolidge v. New Hampshire, supra,403 U.S. 487." State v. Smith, 40 Conn. App. 789, 792-793 (1996).
The defendant has provided no authority to the effect that the analysis with respect to this issue should be any different under Article First, Section Seven of the State Constitution than under the Fourth Amendment
to the United States Constitution.
The defendant has the burden of proving that the private search conducted by Gluhosky was governmental action. See United States v.Teffer, 831 F.2d 734, 739 (7th Cir. 1987). The above facts as found by the court demonstrate that the defendant has failed to satisfy that burden of proof.
Law enforcement authorities were not involved in this investigation until November 2, 1998 and did not meet with Gluhosky until November 3, 1998. By that time Gluhosky had already obtained substantially all of the evidence that was given to the Yale police and ultimately to Agent Tutty which formed the basis of the search warrant. The defendant argues in his brief that information was included in the search warrant affidavit relative to Gluhosky's actions subsequent to November 3, 1998. However, such activities were conducted on his own and not at the direction of law enforcement officials. Furthermore, the court finds persuasive the CT Page 41 state's argument based upon State v. Alexander, 197 Conn. 180 (1985). Even the second compact disc that was provided on November 5, 1998 contained material that was obtained by Gluhosky prior to meeting with police on November 2, 1998. Therefore it is the opinion of the court that Gluhosky was in no way acting as an agent of the government in obtaining the information and material which was utilized by Agent Tutty in drafting the search warrant. He was never at any time asked by any member of law enforcement to monitor the activities of the defendant. Indeed he was told not to do so by the Yale police, Professor Smith and Agent Tutty. The defendant argues that Gluhosky's notes indicate that Kozak told him to tell him when he observed the defendant doing one of his download sessions. However, Gluhosky never did that because Rainville countermanded that request and told him to do nothing further.
An issue arises as to whether the Yale police unlawfully expanded to scope of Gluhosky's private search when it viewed, in Gluhosky's absence the compact discs which had been provided to them. See Walter v.United States, 447 U.S. 649 (1980).
However, the discs in question contained files that were obtained by Gluhosky by simply accessing the UNIX system through the use of his user-name and password. He did not have to utilize the defendant's computer. The files in question were not "read protected" and were therefore able to be viewed by anyone with access to the UNIX system. Thus, in the opinion of the court the defendant did not have a reasonable expectation of privacy with respect to those files viewed by the Yale police but not by Gluhosky. Indeed, given the facts as found by the court, defendant had no reasonable expectation of privacy with respect to any of the files which he downloaded but failed to make inaccessible to other authorized users of the UNIX system.
The government may exceed the scope of a private search if it has an independent right to do so. Walter v. United States, supra at p. 657. Without a reasonable expectation of privacy, the defendant's rights were not violated when the compact discs were viewed by police officials.
Additionally, even if the contents of the disc which Gluhosky did not view himself are disregarded, the remaining information provided to Agent Tutty by Gluhosky and contained in the affidavit in support of the search warrant is sufficient for a finding of probable cause.
The inclusion in an affidavit of tainted evidence does not render the warrant invalid so long as the untainted information in the affidavit suffices to show probable cause. State v. Arpin, 188 Conn. 183, 190
(1982); United States v. Giordano, 416 U.S. 505, 554-55, 94 S.Ct. 1820,40 L.Ed.2d 341 (1974). CT Page 42
The defendant claims that areas KL were outside of the scope of the area to be searched (Residential quarters and office of the Master of Saybrook College). Again the defendant does not put forth a separate argument under the State and Federal Constitutions.
This claim is clearly without merit. As noted above, areas KL are included with Saybrook College on the records of Yale University. That area is accessible to the defendant who keeps a number of personal belongings there. Upon the execution of the search warrant the defendant led members of the search team to that area where his computer and accompanying material was located. Records of Yale indicate the likelihood that the defendant made and received long distance calls from a telephone in that area.
Any issues with respect to a number on the door leading from a common area to KL, or locks on the door leading from area M to KL, or the location of burglar alarm sensors are all explained by the fact that the area in question was moved from Branford College to Saybrook College in May of 1996. The defendant has produced no evidence that areas KL are not part of Saybrook College.
This issue of collateral estoppel comes into play since a motion to suppress raising some of the same issues as does this motion was denied in the Federal Court. This court has been unable to find any case law which applies the doctrine of collateral estoppel to the circumstances of this case. Therefore, in light of the court's findings and. conclusions as noted above the court does not reach the issue of collateral estoppel.
Nor does the court reach the defendant's claim that the evidence seized pursuant to the search must be suppressed should the United States Supreme Court conclude that 18 U.S.C. § 2256 is unconstitutional. The substantive issue of the constitutionality of the statute in question has not been briefed by the parties and it appears to the court that the defendant is raising it at this time in order to preserve any right that may arise in the future based upon the action of the United States Supreme Court. As noted in its brief the state takes issue with the defendant's claim that the action of the United States Supreme Court may result in the fruits of the search being suppressed. A resolution of these issues is, however, for another day.
Based upon the above findings and conclusions of law, the defendant's motion to suppress is denied.
By the Court, CT Page 43
Bruce W. Thompson, Judge