******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JACQUELINE SALZBRUNN *v.* DENNIS M.
SALZBRUNN
(AC 35476)

Beach, Sheldon and Pellegrino, Js.

*Argued April 17, 2014—officially released February 10, 2015*

(Appeal from Superior Court, judicial district of
Danbury, Marano, J. [dissolution judgment]; Winslow,
J. [motion for modification; motion to reargue].)

*Richard W. Callahan*, for the appellant (defendant).

*Harry Gill*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Dennis M. Salzbrunn, appeals from the postjudgment order of the trial court granting the motion for modification filed by the plaintiff, Jacqueline Salzbrunn. On appeal, the defendant claims that the court: (1) applied an improper standard when modifying the defendant's alimony and child support obligations; (2) made erroneous factual findings; and (3) abused its discretion in fashioning the modified financial orders. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The plaintiff and the defendant were married in October, 1987; there were four children born of the marriage. On August 16, 2011, the court dissolved the marriage and approved the parties' separation agreement, incorporating its terms into the judgment of dissolution.

During the marriage, the plaintiff worked for one of the defendant's companies, American Irrigation Systems, Inc., as a bookkeeper, but did not take a salary. During the pendency of the divorce action, until the dissolution of marriage, the plaintiff continued to work for the defendant's company as a bookkeeper and was paid a weekly gross income of $800.

Paragraph nineteen of the separation agreement, entitled "Alimony-Employment of Wife," provided that the defendant was to employ the plaintiff as an at-will employee at his business as a bookkeeper and office manager. She was to receive $1539 per week, or $80,028 annually. Paragraph nineteen further provided that, "as an incident of her employment," the plaintiff was to receive a company vehicle with a gas allowance not to exceed $400 per month and free medical insurance. These financial obligations were deemed not to be "alimony."[1] Paragraph nineteen further provided: "While the [plaintiff] shall be an at-will employee who may be dismissed at any time, and may choose to resign at any time, her termination or resignation, or any change whatsoever, in her job duties or compensation shall constitute grounds for the modification of alimony as hereinafter set forth. Said change, as aforesaid, need not be substantial to constitute grounds for the modification of alimony." Paragraph nineteen further provided that the defendant pay the plaintiff one dollar per year in alimony.[2]

The salary paid to the plaintiff was agreed to constitute satisfaction of the defendant's obligations as to "total family support," i.e., alimony and child support, but the parties also included in paragraph twenty of the agreement additional financial obligations of the defendant to the children. Paragraph twenty provided that, if the plaintiff's employment situation should change, the parties could return to court for "an adjudi-

cation of the appropriate amount of child support." A change in the plaintiff's employment, then, could result only in the modification of the defendant's obligation to pay periodic alimony and his obligations to support his children.

Paragraph twenty-one of the separation agreement, entitled "Medical Insurance," stated that the first $3000 of the minor children's unreimbursed medical expenses each year was to be paid by the defendant, and that the balance of such expenses was to be divided equally between the defendant and the plaintiff. This paragraph of the separation agreement did not contain any language regarding modification.

The plaintiff's employment with the defendant's company ended in late July, 2012. By way of a motion for modification filed on August 17, 2012, the plaintiff requested a modification of the defendant's alimony and child support obligations pursuant to the separation agreement on the ground that she was no longer employed by the defendant. On January 29, 2013, at a hearing on the motion for modification, both parties, without objection, presented testimony about the reasons for the dissolution of the marriage, the financial affidavits of each party, the property distribution pursuant to the separation agreement, the plaintiff's ability to work and current employment, and the relative financial positions of the parties at the time of the motion to modify.

The court granted the motion for modification and ordered the defendant to pay alimony to the plaintiff in the amount of $1600 per week. The court also ordered child support in the amount of $425 per week, pursuant to the child support guidelines.[3] It then terminated the order which had required the defendant to pay the first $3000 of the children's clothing expenses, and ordered the parties to split the remaining cost of clothing evenly. The court modified the parties' respective obligations to pay the children's unreimbursed medical expenses. Unreimbursed medical expenses were to be split equally between the plaintiff and the defendant. The effect of the new order was to relieve the defendant of his obligation to pay the first $3000 of such expenses each year.

The defendant filed a motion to reargue the court's order on the plaintiff's motion to modify on February 14, 2013, arguing that: (1) the defendant's counsel had urged the court to make allowance for the fact that the defendant's company had an operating loss of $52,182, but the court did not allow for the operating loss in its order; and (2) by modifying alimony in part on the basis of the property division in the separation agreement, the court's order ran "contrary to the [j]udgment of the [c]ourt at the time of the dissolution of the marriage." The court denied that motion. This appeal followed.

The defendant claims that the court applied an erroneous legal standard in modifying his alimony and child support obligations. He contends that the court erred in applying a de novo or so-called "second look" standard in modifying the support orders. The defendant argues that because the plaintiff relied upon her change of employment, as provided for in the separation agreement, rather than upon General Statutes § 46b-86 (a),[4] as the justification for modification, that only a very limited review of the court's prior orders should have been undertaken. The court erred, the defendant argues, in conducting a more comprehensive inquiry of the sort contemplated by General Statutes § 46b-82.

The defendant raises this issue for the first time on appeal. At the hearing on the motion for modification, the court stated that it intended to apply the criteria set forth in § 46b-82,[5] and neither party objected. At the hearing, the plaintiff sought to preclude the defendant from proving cohabitation. See General Statutes § 46b-86 (b) (trial court may suspend, reduce or terminate periodic alimony upon finding that cohabitation alters financial needs of person receiving alimony). The court noted that § 46b-86 was "somewhat irrelevant" to the proceedings because the plaintiff was seeking a modification of the defendant's alimony and child support obligations pursuant to the separation agreement, which permitted such a modification when the plaintiff was no longer employed by the defendant's company. The court stated: "We are really squarely on the issue of alimony. We're going to deal with § 46b-82 and . . . of course, we're going to deal with child support as well, the guidelines and so forth." Neither party objected.

The defendant did not raise in the trial court the claim that the court should not have modified alimony and child support based upon the criteria in § 46b-82, but rather should have conducted a more limited review based more narrowly upon the agreement, and accordingly the issue is unpreserved.[6] See *Ucci* v. *Ucci*, 114 Conn. App. 256, 969 A.2d 217 (2009) (claim on appeal that trial court applied wrong standard in ruling on motion to modify unreviewable where trial court stated it was applying criteria in § 46b-82 and moving party did not alert court at any time that he sought modification pursuant to agreement only and that court should not consider § 46b-82 criteria). "It is well settled that a trial court can be expected to rule only on those matters that are put before it. . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Citations omitted; internal quotation marks omitted.) Id., 261–62.

The defendant next claims that in fashioning the financial orders, the court made erroneous factual findings when it (1) added $20,000 to the defendant's net income because his business had paid for $20,000 of his personal expenses, and (2) calculated rental and depreciation at $86,788, when the correct amount was $32,623. We are not persuaded.

"With regard to the trial court's factual findings, the clearly erroneous standard of review is appropriate. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *Miller* v. *Guimaraes*, 78 Conn. App. 760, 766–67, 829 A.2d 422 (2003).

In its January 29, 2013 decision from the bench on the motion for modification, the court found that the defendant's total gross income was $263,502. The court included in that amount $20,000 in personal expenses that were charged to the American Express credit card of the defendant's company. The court also included in gross income the rental income received by the defendant from his two properties. The court found, as explained in a July 17, 2013 articulation, that the rental income from the two properties in 2011, including the depreciation taken for tax purposes, totaled $86,788.[7]

A

The defendant argues that the court erred in finding that he received an additional $20,000 in income based on personal expenses allegedly being paid by the defendant's company on its American Express bill; he claims that he received no such income. He contends that the court's finding that American Irrigation Systems paid for some of his personal expenses was pure speculation[8] and therefore clearly erroneous. We disagree.

The court's finding that the defendant implicitly received $20,000 in income, as a result of the defendant's charging to his business account certain personal expenses, was not speculative but rather was based on evidence adduced at the hearing on the motion for modification. At the hearing, the plaintiff introduced into evidence, as a full exhibit, a document from the defendant's business entitled "American Irrigation Systems Custom Detail Transactions Report January through December 2012" (report). At the top of the report was a handwritten note stating: "* = PERSONAL (ALL ELSE = BUSINESS)." The report contained numerous credit card charges to American Express with asterisks next to charged items. At the hearing, the plaintiff, who had been the bookkeeper of the business,

testified that the amount of gross income listed on the defendant's financial affidavit did not accurately report his total income. She explained that when she worked at American Irrigation Systems as bookkeeper she "would see the American Express bills where [the defendant] had quite a lot of . . . mostly personal things on his American Express." At the January 2013 hearing, she testified that she had been employed at American Irrigation Systems until August, 2012, and that, on average, over the past five years the defendant had charged $10,000 per year of personal expenses to the business account. She further testified that the report contained some items without asterisks that in fact were personal charges, including items such as various ski vacation related expenses. The plaintiff further testified that the items on the report that were personal amounted to $28,000.

The defendant argues that the court's finding of $20,000 was speculative because (a) the court used his 2011 tax returns to determine the defendant's income when the American Express report was from 2012 and the 2012 tax returns had not been completed; (b) the plaintiff, who testified that certain expenses on the defendant's business American Express were personal expenses, had no personal knowledge as to how accountants designate personal expenses on business accounts, and (c) the largest claimed personal expense on the American Express bill, for meals and expenses, was not listed on the defendant's 2011 tax return as an expense charged to the business. The defendant's arguments may be relevant to the weight and credibility of the evidence, but the evidence was not impermissibly speculative for several reasons. The report clearly listed certain expenses as personal in nature, and the fact that the 2012 tax returns were not in evidence does not render the court's findings regarding the personal nature of some expenses on the report speculative. The plaintiff had been the bookkeeper at American Irrigation Systems and the court properly could have credited her testimony regarding the personal nature of some expenses. It is within the province of the trial court to resolve conflicts in the evidence. The court could have credited the plaintiff's testimony that the defendant's financial affidavit, which reported an income figure similar to that on his 2011 tax return, understated income because it did not include various personal expenses charged to American Irrigation Systems. The court's finding regarding the $20,000 in extra income from the defendant's business was not clearly erroneous.

### B

The defendant argues that the court erred in finding that rental income and depreciation, which were included in the court's computation of gross income, amounted to $86,788. He argues that in 2011 American

Irrigation Systems paid $78,000 in rent to American Real Estate Investments, LLC, which the defendant also owned, and that this payment resulted in American Irrigation Systems' incurring a loss of $52,182; and American Real Estate Investments' incurring a profit of $57,086. He argues that the court erred in concluding that the money he drew from American Irrigation Systems and American Real Estate Investments, which properties were awarded to him under the judgment, constituted income. The defendant also appears to argue that the court should have taken into account the loss of $52,182 when modifying its order and should have subtracted that amount from the rental income.

On his financial affidavit, the defendant listed under "source of income": 1. "rental" $317.50 (gross amount per week), and 2. "rental" $1307.69 (gross amount per week), for a total yearly gross income of $84,509.88. The court credited the rental income that the defendant included in his financial affidavit. During the hearing on the motion for modification, the court stated: "[The defendant] has an income generating property which also affords him a place to live. . . . So, notwithstanding, that you have a certain amount of equity in the property should you sell it tomorrow, he has a property that generates income. Now, we're not double-dipping, we're not saying that his property is actually worth more than that; we're accepting the amount that he puts on his financial affidavit . . . despite the fact that it's a business zoned property. . . . We are accepting at face value, the value that he puts on it, but it is, after all, an income generating property. And you're not double-dipping when you say that it, also generates income. You have to count that income, it's income to him less expenses, but it's income to him." The court found that the rental income received by the defendant from the two properties, disregarding the depreciation taken for tax purposes, totaled $86,788.[9] The court did not err in crediting the rental income shown on the defendant's financial affidavit.[10]

### III

The defendant last claims that the court abused its discretion because the modification of the financial orders was inequitable. He argues that the modified financial orders are inconsistent with the original orders issued under the dissolution judgment and, as such, it was clear that the orders were meant to "punish" him. He argues that the plaintiff had fewer expenses at the time of the modification than at the time of dissolution, because one of the minor children had left for college; that he had more expenses, as he was paying that child's college expenses; and that when the separation agreement was accepted by the court one year earlier, the plaintiff's needs were agreed to have been met by her receiving $80,000 per year, but she effectively received a greater amount as a result of the modification

order. We disagree, and conclude that the trial court did not abuse its discretion.

"[I]t is generally uncommon for a reviewing court to determine that the trial court has abused its broad discretion in deciding whether to award alimony and otherwise craft financial orders in a dissolution decree. Reluctance to reverse the trial court's exercise of discretion, however, should not mean that the door is entirely closed to successful appeals in dissolution cases. . . . Our appellate courts have reversed excessive or inequitable financial orders. See *Greco* v. *Greco*, 275 Conn. 348, 356–60, 880 A.2d 872 (2005) (reversing financial orders when 98.5 percent of marital property and substantial alimony awarded to one spouse); *Pellow* v. *Pellow*, 113 Conn. App. 122, 129, 964 A.2d 1252 (2009) (reversing financial orders when orders consumed 90 percent of paying spouse's income)." (Citation omitted; internal quotation marks omitted.) *Kovalsick* v. *Kovalsick*, 125 Conn. App. 265, 272, 7 A.3d 924 (2010).

Pursuant to paragraph 19 of the agreement, the plaintiff received $80,028 per year in exchange for working at the defendant's company, and, incidental to employment, received a company vehicle, a gas allowance not to exceed $400 per month and free medical insurance. The agreement provided that the defendant was to pay the plaintiff $1 per year in alimony. When the plaintiff was no longer employed by the defendant, she filed a motion for modification of alimony and child support, as provided in the agreement.

The defendant cannot prevail on his argument that the court's orders were punitive or that the award was inequitable. The court modified the judgment of dissolution by ordering the defendant to pay alimony to the plaintiff in the amount of $1600 per week. The court also ordered child support in the amount of $425 per week, pursuant to the child support guidelines. In crafting the financial orders, the court also terminated the order requiring the defendant to pay the first $3000 of the children's clothing expenses and ordered, instead, that the parties split that cost; ordered that unreimbursed medical expenses were to be split equally between the plaintiff and the defendant, rather than the defendant's paying the first $3000 of such expenses each year; and ordered that the defendant was no longer obligated to pay for the plaintiff's vehicle or gas.

The court took into account the financial situations of both parties. As noted in part II of this opinion, the court found that the defendant in fact enjoyed considerably more income than he had claimed. The court found that the defendant's net income was approximately $215,000 per year. The newly ordered alimony and child support totaled approximately $105,000. The result is not confiscatory or blatantly inequitable. Cf. *Greco* v. *Greco*, supra, 275 Conn. 360–64 (court abused discretion when payment of alimony and insurance premiums

alone left defendant with annual net income deficit of $1500.16); *Rozsa* v. *Rozsa*, 117 Conn. App. 1, 9–10, 977 A.2d 722 (2009) (court did not abuse discretion in ordering plaintiff to pay alimony award in amount roughly equal to one-half of his net income despite plaintiff's claim that his net income was less than found by court); see also *Pasquariello* v. *Pasquariello*, 168 Conn. 579, 583, 362 A.2d 835 (1975) ("the trial court, in a divorce action, has wide discretion in the type and amount of alimony awarded . . . [and] [s]uch judicial discretion . . . is . . . exercised according to the recognized principles of equity" [citations omitted]). In the circumstances presented, we cannot say that the court abused its broad discretion in fashioning the financial orders.

The judgment is affirmed.

In this opinion SHELDON, J. concurred.

[1] "Alimony" is defined in relevant part as: "A court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are divorced." Black's Law Dictionary (9th Ed. 2009).

[2] There was no requirement, then, that a party was required to prove a "substantial change in circumstances" in order to modify alimony. Cf. General Statutes § 46b-86.

[3] The additional amount of $425 weekly in child support does not appear in the relevant order, but can be found in the trial court transcript.

[4] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines . . . unless there is a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . ."

[5] General Statutes § 46b-82 (a) provides in relevant part: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other . . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment."

[6] The parties were requested by this court to address in supplemental briefing the questions of whether the issue of the appropriate standard was raised in the trial court and, if not, on what legal basis could this court adjudicate the issue. The defendant offered only the *plaintiff's* pleading, which alleged a change of circumstance only by virtue of the separation agreement. It is quite clear, then, that the claim that only a limited review could be maintained once a change of employment occurred was never directly presented to the trial court, and wide-ranging evidence was not objected to. Further, we do not consider the issue to present an "exceptional circumstance" justifying our sua sponte review pursuant to *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 161–64, 84 A.3d 840 (2014).

[7] The court further explained in the articulation that because the calculation sheet had been discarded after the hearing, it was unable to account for a discrepancy of approximately $3200 in the addition of the numbers for 2011. The court concluded that the discrepancy was de minimis for purposes of the court's order of modified child support and alimony.

[8] "If the trial court's . . . findings of fact rest on speculation rather than on sufficient evidence, they are clearly erroneous." *State* v. *Smith*, 40 Conn. App. 789, 801, 673 A.2d 1149, cert. denied, 237 Conn. 915, 675 A.2d 886, cert.

denied, 519 U.S. 873, 117 S. Ct. 191, 136 L. Ed. 2d 128 (1996).

[9] See footnote 7 of this opinion.

[10] We deem the claim that the rental income generated from the two properties awarded to him did not constitute income for purposes of this case to be inadequately briefed.