UNITED STATES of America,
Plaintiff–Appellee,

v.

Sheila Lou GARLOCK, now known as
Sheila Lou Vorba, Defendant–
Appellant.

No. 93–3228.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1994.

Decided March 25, 1994.

Jon Hammond, Cedar Rapids, IA, argued, for appellant.

Judith Whetstine, Asst. U.S. Atty., Cedar Rapids, IA, argued, for appellee.

Before LOKEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and KYLE *, District Judge.

JOHN R. GIBSON, Senior Circuit Judge.

A jury convicted Sheila Lou Garlock, now known as Sheila Lou Vorba, of embezzlement, 18 U.S.C. § 656 (1988), and making false teller cash account reports, 18 U.S.C. § 1005 (1988). Garlock appeals her conviction and sentence, contending that because her statements to bank examiners were involuntary, the district court should have suppressed them. The district court[1] denied her pretrial motion to suppress and admitted the statements at trial. We affirm.

In 1992, Firstar Bank of Cedar Rapids, Iowa discovered that approximately $41,985 was missing from the bank's vault. The bank contacted John Koleas, a security officer for the bank's holding company, to investigate the disappearance. Koleas and Mary Pat Panetti, a corporate auditor, conducted the ensuing investigation without assistance by or contact with any law enforcement or regulatory agency. Both Koleas and Panetti are fraud examiners certified by the National Association of Certified Fraud Examiners. Koleas has also received investigative training through the American Bankers Association and the Bank Administration Institute. Koleas' and Panetti's investigation led them to question Garlock, in part because it was her transaction that resulted in a shortage of $41,875 in the bank's general ledger. Garlock initially denied taking the money, but admitted the offense to Koleas after one-half hour of questioning by Panetti. During her statement, Garlock told the investigators how she removed cash on its way to and from the main vault, and hid the thefts through false entries in her cash deposit and withdrawal

slips. She also signed a written confession. After obtaining Garlock's confession, the bank conducted a termination interview. During this interview, Panetti suggested that Garlock provide the bank with restitution. Garlock then wrote the bank a check for $200.00. The details of the confession were introduced at trial and provided the basis for the government's case.

Garlock filed a pretrial motion to suppress the confession, the check, and her statements to the investigators. The court denied the motion, and the evidence was admitted without objection at trial.

Garlock's sole argument on appeal is that the district court erred in admitting the evidence obtained during the interrogation. She contends that Koleas and Panetti were, for purposes of the Fourth and Fifth Amendments, government law enforcement officials. Thus, she argues they were obligated to inform her of her Miranda[2] rights before conducting a custodial interrogation. The record is clear that they did not do so.

■ A district court's factfinding in support of its disposition of a pretrial motion to suppress is reviewed under a clearly erroneous standard. United States v. Riedesel, 987 F.2d 1383, 1387 (8th Cir.1993). We review de novo the court's ultimate application of the law to these facts. Id. at 1388.[3]

■ The Supreme Court has expressly held that the constraints of the Fourth and Fifth Amendments do not apply to purely private activity. Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921) (Fourth Amendment provides no protection against private searches); Colorado v. Connelly, 479 U.S. 157, 166, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986) (even "outrageous behavior by a private party" does not

---

* The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa.

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. We reject the government's contention that a plain error analysis is appropriate in this case.

The government bases its contention on Garlock's failure to renew her objection to the admission of the evidence at trial. We are convinced that Garlock adequately raised the issues underlying her appeal in her pretrial motion. The fact that some of these issues were developed further at trial does not change the fact that Garlock substantially presented her legal arguments, and their factual bases, at the suppression hearing.

violate the Fifth Amendment). Thus, the critical question before this court is the propriety of the district court's determination that Koleas and Panetti were private actors.

Garlock first directs our attention to 12 C.F.R. § 21 (1993). Section 21 requires banks to designate a security officer whose duties include developing a program to help identify persons committing crimes within the bank. The section also directs the reporting of most crimes to the Office of the Comptroller of Currency, and "strongly encourage[s]" reporting to law enforcement officials. 12 C.F.R. § 21.11. According to Garlock, these provisions transform the investigators' conduct into a joint enterprise with law enforcement officials.

We recognize that the government can exercise such control over a private actor that a "private" action can fairly be attributed to the government for purposes of the Fourth and Fifth Amendment. *See Fidelity Fin. Corp. v. Federal Home Loan Bank*, 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). However, the mere fact that Firstar engages in a heavily regulated business does not create the required nexus. *See Morast v. Lance*, 807 F.2d 926, 929 (11th Cir.1987) (despite pervasive regulation, "national banks are not so much the 'instrumentalities' of the federal government that [bank] officers are agents of the federal government"); *United States v. Solomon*, 509 F.2d 863, 868–69 (2d Cir.1975) (questioning by New York Stock Exchange not attributable to federal government despite pervasive regulation); *Fidelity*, 792 F.2d at 1435.

Garlock must show that, "in light of all the circumstances," Koleas or Panetti "acted as an instrument or agent of the government." *Skinner v. Railway Executives' Ass'n*, 489 U.S. 602, 614, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989). She may meet this test by showing that "the government exercised such coercive power or such significant encouragement that it is responsible" for their conduct, or that the exercised powers are the "exclusive prerogative of the gov-

ernment." *Fidelity*, 792 F.2d at 1435. She has failed to do so. Garlock concedes that there is no evidence that any traditional law enforcement agency knew of Koleas' and Panetti's investigation prior to Garlock's confession. The government exercised absolutely no control over the manner in which Firstar maintained its internal security. It certainly did not specifically direct Koleas and Panetti to proceed without notifying Garlock of any rights she might possess.

This is not a case in which police officials used private persons to target a particular suspect. *Cf. Corngold v. United States*, 367 F.2d 1, 5–6 (9th Cir.1966) (Fourth Amendment applicable where Customs agent requested airline agent to open a package in airline agent's possession). Rather, the government merely directed Firstar to "assist in identifying and apprehending" any person committing crimes against the bank. 12 C.F.R. § 21.1. Contrary to Garlock's argument, this section does not require bank investigators to use every available means, including those denied by the Constitution to government actors, to investigate a suspected crime. The regulations simply do not address the specific manner in which Firstar conducts its internal security measures. Nor does section 21 require reporting of the results of an investigation to law enforcement authorities.[4] The only mandatory reporting provisions involve reports to the OCC. These reports are used to create a database for monitoring persons suspected of committing crimes against banks. *See* 12 C.F.R. § 21.11(a). This helps the OCC perform its regulatory duty of overseeing the integrity of the federal banking system.

We similarly reject Garlock's contention that the investigators were subject to the Fourth and Fifth Amendments simply because they were engaged in the "public function" of law enforcement. *Cf. Marsh v. Alabama*, 326 U.S. 501, 506–09, 66 S.Ct. 276, 278–80, 90 L.Ed. 265 (1946) (company-owned town subject to First and Fourteenth Amendments). The courts have consistently held that the mere fact that an individual's job involves the investigation of crime does

---

**4.** Thus, we need not decide the degree to which mandatory reporting might constitute government control sufficient to treat the investigators as government actors.

**444**

not transform him into a government actor. *See, e.g., State v. Buswell,* 460 N.W.2d 614, 620 (Minn.1990) (race track security); *United States v. Lima,* 424 A.2d 113, 118–19 (D.C.App.1980) (store detective). This is true even when the government requires that certain security measures be taken. *See State v. Sanders,* 185 N.J.Super. 258, 448 A.2d 481, 486 (1982) (state required detailed casino security measures, but did not authorize specific contested conduct). Many of these courts have reasoned that the security personnel were pursuing legitimate private ends unrelated to the pursuit of a criminal conviction. *See, e.g., id.* (casino was "pursuing nothing but its private interests"); *People v. Houle,* 13 Cal.App.3d 892, 91 Cal.Rptr. 874, 876 (1970) (bail bondsman's pursuit of absconded defendant not state action because he was "acting to protect his own private financial interest and not to vindicate the interest of the state"); *Buswell,* 460 N.W.2d at 619. Koleas and Panetti were pursuing Firstar's valid interest in internal security. Indeed, their investigation resulted in Garlock's termination—a matter of obvious concern to their employer.

On these facts, the district court did not err in finding that Koleas and Panetti were private actors outside the ambit of the Fourth and Fifth Amendments. Accordingly, we affirm.