# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3856

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| Timothy John Lewis, | * | of Minnesota. |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: March 9, 1999

Filed: July 15, 1999

_____

Before BEAM and HEANEY, Circuit Judges, and GOLDBERG,[1] Judge of the United States Court of International Trade.

_____

BEAM, Circuit Judge.

Timothy John Lewis was charged with and convicted by a jury of possession of cocaine base with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and

_____

[1]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

841(b)(1)(B)(iii).  He appeals the district court's[2] denial of his motion to suppress evidence found during a search incident to his arrest on grounds that the arrest was unlawful.  We affirm.

## I.    BACKGROUND

Our recitation of the facts is derived primarily from the magistrate judge's findings in a report and recommendation prepared after a hearing on Lewis's motion to suppress.  On April 9, 1998, officers Jeffrey Jindra and Jeffrey Binfet of the Minneapolis Police Department responded to a citizen's complaint of public drinking at a residential address.  The officers arrived at the address in an unmarked squad car and wearing Minneapolis Police Raid T-shirts.  Upon their arrival, the officers observed several people gathered in the front yard of the house.  In addition, there were three males sitting in a car parked in front of the residence.  Lewis stood on the curb  by the car. He was talking to the occupants in the car and was drinking from what Officer Jindra identified as an open bottle of malt liquor.

The officers parked their vehicle and approached Lewis.  According to  Officer Jindra's testimony at the hearing, Lewis handed the malt liquor to a woman standing beside  him, started walking backwards, and put his right hand into his right pants' pocket.  He had a very nervous look and his eyes were darting around. Officer Jindra then took two steps forward and told Lewis to take his hand out his pocket.  He then handcuffed Lewis and placed him under arrest for loitering with an open bottle in violation of a Minneapolis ordinance.

After arresting Lewis, Officer Jindra patted him down whereupon he felt a lump in the same pocket where Lewis had placed his hand.  Officer Jindra reached into the

---

[2]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

pocket and pulled out a one ounce rock of what appeared to him to be crack cocaine. The officers then called for additional back up. More officers arrived at the scene and Lewis was placed in a squad car and taken to a local police station. At the station, Officer Benfit and Officer Jindra each interviewed Lewis. An hour after Lewis's arrest, a search warrant was executed at the address which Lewis had given as his residence. Additional evidence was seized at that location.

Lewis was indicted for possession of cocaine base with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). He moved to suppress: (1) the evidence obtained during the search incident to his arrest; (2) his statements and admissions to the police; and (3) the evidence from the search of his residence. The magistrate judge[3] recommended that all the motions be denied. Specifically, with regards to the motion to suppress the evidence obtained from the search incident to Lewis's arrest, the magistrate judge found that because the officers observed Lewis drinking from the bottle, he had been lawfully arrested under Minneapolis ordinances 364.40 and 364.45 for loitering on the curb of the street with an open bottle of malt liquor.[4] Therefore, the judge concluded, the search of Lewis's person was valid as a

---

[3]The Honorable Franklin Noel, United States Magistrate Judge for the District of Minnesota, presiding.

[4]Minneapolis, Minn., Code of Ordinances § 364.40 states in pertinent part:

**Consuming in public**. No person shall consume intoxicating liquor as defined by Minnesota Statutes, Section 340A.101, Subdivision 14, or nonintoxicating malt liquor as defined by Minnesota Statutes, Section 340A.101, Subdivision 19, while (1) on a public street, highway, alley, sidewalk, boulevard, or any place frequented by the public; (2) on any private property without the consent of the owner of such property; or (3) while in a vehicle upon a public highway.

Minneapolis, Minn., Code of Ordinances § 364.45 states in pertinent part:

search incident to a lawful arrest and any evidence obtained as a result thereof was admissible.

The district court, after conducting a de novo review of the record, adopted the magistrate judge's report and recommendation, and denied Lewis's motions to suppress. A jury trial followed and Lewis was convicted. Prior to sentencing, Lewis moved for reconsideration of the order denying his motions to suppress. It was denied and Lewis was sentenced to 97-months imprisonment. On appeal, Lewis's sole argument is that his arrest was unlawful under the Fourth and Fourteenth Amendments, and therefore the drugs obtained during the search incident to his arrest, as well as any statements taken following the arrest, should have been suppressed as "fruit of the poisonous tree."

## II.   DISCUSSION

We review a district court's fact finding in support of its disposition of a pretrial motion to suppress under a clearly erroneous standard. See United States v. Garlock, 19 F.3d 441, 442 (8th Cir. 1994). We review de novo the court's ultimate application of the law to these facts. See id. Our examination of the record reveals that none of the findings made are clearly erroneous. Thus the sole remaining issue before us is whether the district court correctly concluded that Lewis's arrest was lawful.

At the outset, we note that Lewis does not dispute that the officers observed him violating the Minneapolis ordinance prohibiting loitering in possession of an open

---

**Loitering in possession of open bottle**. No person shall loiter in any public street, highway, alley, sidewalk, boulevard or any other public property, or on any private property without consent of the owner of such property, while in possession of any bottle or other receptacle containing intoxicating liquor or non-intoxicating malt liquor which has been opened, or the seal broken, or the contents partially removed, with intent to consume such intoxicating liquor or non-intoxicating malt liquor.

bottle. Nevertheless, he claims that such violation is, at most, a misdemeanor, and because Minnesota Rule of Criminal Procedure 6.01 permits custodial arrests for misdemeanors only under certain circumstances, none of which were present in his case, the officers were therefore only authorized to issue him a citation, not to arrest him.[5]

In United States v. Bell, 54 F.3d 502 (8th Cir. 1995), this court rejected a similar argument. In Bell, we denied a defendant's motion to suppress cocaine base discovered in a search incident to an arrest for riding a bicycle without a headlight. The district court in Bell had granted the motion on the grounds that Bell's arrest was unlawful because Iowa law only permitted the officers to issue Bell a citation for the bicycle charge, but not to arrest him. See id. at 503. We reversed, holding that "when a federal court must decide whether to exclude evidence obtained through an arrest, search, or seizure by state officers, the appropriate inquiry is whether the arrest, search, or seizure violated the Federal Constitution, not whether the arrest, search, or seizure violated state law." Id. at 504. Under Bell, we think the appropriate inquiry here is not whether Lewis's arrest was valid under Minnesota's criminal procedure statute, but rather under federal law. See also United States v. Wright, 16 F.3d 1429, 1433-37 (6th Cir. 1994).

---

[5]Minnesota Rule of Criminal Procedure 6.01, subd. 1(1)(a) provides:

Law enforcement officers acting without a warrant, who have decided to proceed with prosecution, shall issue citations to persons subject to lawful arrest for misdemeanors, unless it reasonably appears to the officer that arrest or detention is necessary to prevent bodily harm to the accused or another or further criminal conduct, or that there is a substantial likelihood that the accused will fail to respond to a citation. The citation may be issued in lieu of an arrest, or if an arrest has been made, in lieu of continued detention. If the defendant is detained, the officer shall report to the court the reasons for the detention. Ordinarily, for misdemeanors not punishable by incarceration, a citation shall be issued.

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 414 U.S. 218, 224 (1973). Furthermore, "[t]he authority to search the person incident to a lawful custodial arrest . . . does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." Id. at 235. It is the fact of the lawful arrest which establishes an officer's authority to search. See id.

We agree with the district court's conclusion that Lewis was lawfully arrested. The Supreme Court has noted that is a well-established principle of the common law that a police officer is permitted to arrest without a warrant if a misdemeanor is committed in the officer's presence. See United States v. Watson, 423 U.S. 411, 418 & 421-24 (1976); see also Higbee v. City of San Diego, 911 F.2d 377, 379 (9th Cir. 1990) (stating that this practice "has never been successfully challenged and stands as the law of the land"); United States v. Smith, 73 F.3d 1414, 1416 (6th Cir. 1996) (same); Wilson v. Attaway, 757 F.2d 1227, 1235 (11th Cir. 1985) (same). It is clear that Lewis's violation of the Minneapolis ordinances constitutes a misdemeanor. The Minneapolis Code of Ordinances provides that "Every person convicted of a violation of any provisions of this Code . . . shall be punished by a fine of not to exceed seven hundred dollars ($700.00) or by imprisonment for not to exceed ninety (90) days or both." Minneapolis, Minn., Code of Ordinances § 1.30(a). The Minnesota legislature has defined a misdemeanor as a "crime for which a sentence of not more than 90 days or a fine of not more than $700, or both, may be imposed." Minn. Stat. Ann. § 609.02. In light of the fact that there is no dispute that the misdemeanor was committed in the presence of the officers, we believe Lewis's arrest and the subsequent search of his person were lawful.

III.   CONCLUSION

For the foregoing reasons, we affirm the district court's denial of the motion to suppress.

HEANEY, Circuit Judge, concurring.

I concur in the majority's opinion because I recognize that <u>United States v. Bell</u>, 54 F.3d 502 (8th Cir. 1995), is controlling precedent in the Eighth Circuit on the issue of whether the illegality of Lewis's warrantless arrest under Minnesota law renders the search incident to that arrest unconstitutional. However, I believe that <u>Bell</u> was incorrectly decided and suggest that this case provides a good opportunity for reconsideration of the <u>Bell</u> decision by our court en banc.

I have no quarrel with the well-established principle that federal standards must be applied in judging the legality of the search. Under <u>United States v. Robinson</u>, 414 U.S. 218, 224 (1973), a lawful custodial arrest is a prerequisite to a warrantless search. In this case, however, we do not have a lawful custodial arrest, and thus the search should not fall under the <u>Robinson</u> exception to the Fourth Amendment's warrant requirement.

In <u>United States v. Di Re</u>, 332 U.S. 581, 589 (1948), the Court found that the defendant had been arrested by New York state officers who lacked arresting authority under state law. The Court then reversed the conviction resulting from evidence seized in a search incident to the arrest. <u>See</u> <u>id.</u> at 593. The <u>Di Re</u> court specifically rejected the government's argument that the validity of an arrest without a warrant for a federal crime is a matter of federal law to be determined by a uniform rule applicable in all federal courts. <u>See</u> <u>id.</u> at 589. Instead the court held "that in absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity." <u>Id.</u>

In <u>Michigan v. DeFillippo</u>, 443 U.S. 31, 36 (1984), the Court stated, "[w]ether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law" (citing <u>Ker v. California</u>, 374 U.S. 23, 37 (1963); <u>Johnson v. United States</u>, 333 U.S. 10, 15, and n.5 (1948)). And likewise, the Court in <u>Welsh v. Wisconsin</u>, in addressing the circumstances in which the Fourth Amendment prohibits a warrantless arrest by state officers, looked to state law classification of the alleged crime in judging the reasonableness of the arrest, stating "[g]iven that the classification of state crimes differs widely among the States, the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense." 466 U.S. 740, 754 n.14 (1984).

The Ninth Circuit applied this precedent in a situation similar to the instant case in <u>United States v. Mota</u>, 982 F.2d 1384, 1387 (9th Cir. 1992), holding "it is clear that state law governing arrests is relevant to assessing the constitutionality of a search incident to that arrest." In <u>Mota</u>, Santa Ana police officers arrested and searched two brothers for operating a food cart without a valid business license in violation of Santa Ana municipal code. <u>See</u> <u>id.</u> at 1385. Upon searching the brothers, the officers discovered counterfeit bills in their pockets. <u>See</u> <u>id.</u> The <u>Mota</u> court reversed the district court's denial of the appellants' motion to suppress the evidence. The court found that the evidence seized from the appellants was unlawfully obtained and should have been suppressed, since the officers were required to only issue a citation and were without legal authority under California law to make a custodial arrest for the infraction. <u>See</u> <u>id.</u> at 1388. I agree with the reasoning and result reached by the <u>Mota</u> court.

As the <u>Mota</u> court observed, the government is asking us to sanction an otherwise unconstitutional search on the basis of an arrest which is illegal as a matter of state law. <u>See</u> <u>id.</u> at 1387. Minnesota, like California in the <u>Mota</u> case, has specifically removed officer authority to arrest in Lewis's situation. <u>See</u> Minn. R. Crim.

P. 6.01, subd. 1(1)(a). Since we are dealing with an arrest by Minneapolis police officers for a violation of a Minneapolis ordinance, the federal court should not sanction an explicit violation of the governing laws as defined by the legislature and courts of the State of Minnesota. See id.; Minnesota v. Varnado, 582 N.W.2d 886 (Minn. 1998).

Finally, although it is true that at common law an officer could make a warrantless arrest for a misdemeanor committed in his presence, I see no basis for relying on this rule in analyzing a statutory misdemeanor. It seems incongruous to rely on common law as authority for an arrest based on a statutory offense, particularly when the same statutory authority has already constrained the power to arrest for that offense.

I urge this court to reconsider Bell en banc.

GOLDBERG, Judge, concurring.

I concur in the majority's opinion because I, too, recognize that United States v. Bell, 54 F.3d 502 (8th Cir. 1995), is controlling precedent in the Eighth Circuit for this case. I write separately, however, to express my concern that, while not necessarily incorrect, Bell and the instant case nevertheless ignore important precedent relevant to whether state law should play a role in deciding if a custodial arrest is valid for Fourth Amendment purposes.

As we all agree, under the search incident to arrest exception, it is the fact of the lawful arrest that establishes an officer's authority to search. See United States v. Robinson, 414 U.S. 218, 224 (1973). To assess the lawfulness of the arrest, the Bell court concluded that "we do not think Fourth Amendment analysis requires reference to an arrest's legality under state law." 54 F.3d at 504. Rather, "the appropriate inquiry is whether the arrest . . . violated the Federal Constitution, not whether the arrest . . . violated state law." Id. A strong line of cases from other circuits supports this

conclusion. See United States v. Le, 173 F.3d 1258, 1265 (10th Cir. 1999) (rejecting the proposition that the validity of the arrest should be examined with reference to state law); United States v. Wright, 16 F.3d 1429, 1434-37 (6th Cir. 1994) (same); United States v. Clyburn, 24 F.3d 613, 616 (4th Cir. 1994) (same); United States v. Walker, 960 F.2d 409, 415-16 (5th Cir. 1992) (same); United States v. Mealy, 851 F.2d 890, 907 (7th Cir. 1988) (same); United States v. Pforzheimer, 826 F.2d 200, 202-04 (2d Cir. 1987) (same).

As Judge Heaney points out in his concurrence, however, there is countervailing precedent on the issue. Most importantly, in Michigan v. DeFillippo, 443 U.S. 31 (1979), the Court stated that "[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." 443 U.S. at 36; see also United States v. Mota, 982 F.2d 1384, 1387 (9th Cir. 1993). And, although implicitly called into question, the Bell decision did not address United States v. Franklin, 728 F.2d 994 (8th Cir. 1984), which looked to state law when it found that an arrest was valid. 728 F.2d at 997.

Upon review of the relevant precedent, it seems to me that DeFillippo at least suggests that state law should play an ancillary role (to federal constitutional law) in assessing whether an officer has made a lawful custodial arrest. Applying this framework to the facts of this case, Minnesota has explicitly authorized officers to arrest individuals in Lewis's situation (rather than issue a citation) only when specific, enumerated exigencies warrant. See Minn. R. Crim. P. 6.01, subd. 1(1)(a) (stating that "[l]aw enforcement officers acting without a warrant . . . shall issue citations to persons subject to lawful arrest for misdemeanors, unless it reasonably appears to the officer that arrest or detention is necessary to prevent bodily harm to the accused or another or further criminal conduct, or that there is substantial likelihood that the accused will fail to respond to a citation"). Therefore, in my view, part of our Fourth Amendment reasonableness analysis of Lewis's arrest and subsequent search requires us to consider whether Officer Jindra arrested Lewis to prevent injury to himself or others, to prevent

further criminal activity, or to ensure that Lewis would respond to the citation. Nevertheless, because I recognize Bell is controlling here, I concur in the majority's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.