# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2511

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff – Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Warren Patrick Banks, Jr., | * | District Court for the |
| also known as Richard Anderson, | * | District of Minnesota. |
| also known as Pat Ricky, | * | |
| also known as Gerald Banks, | * | |
| also known as Jarald Vincent Banks, | * | |
| | * | |
| Defendant – Appellant. | * | |

_____

Submitted: December 10, 2008
Filed:  February 2, 2009

_____

Before COLLOTON, BRIGHT, and SHEPHERD, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Appellant Warren Patrick Banks, Jr. challenges his conviction for being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2), arguing that the district court (1) erred by denying his motion to suppress a firearm recovered as the result of an illegal search and seizure and (2) abused its discretion by allowing the government to introduce the names of his two prior felony convictions. Jurisdiction arises under 28 U.S.C. § 1291. The district court did not err by denying Banks's

motion to suppress or abuse its discretion by admitting evidence of two prior felonies. We affirm.

## FACTS AND PROCEDURAL HISTORY

The parties do not dispute the material facts as found by the magistrate judge[1], and adopted by the district court[2], which are as follows:

On July 18, 2007, at approximately 1:40 a.m., Officers Fitzpatrick and Gregory were patrolling Broadway Avenue in Minneapolis. As they traveled eastbound, the officers saw Defendant riding his bicycle on the northern sidewalk along Broadway Avenue. Defendant was also traveling eastbound. No other pedestrians, bicycles, or vehicles were in the vicinity. Officer Gregory noticed that Defendant's bicycle did not have a headlamp, which is required by Minneapolis city ordinance when a bicycle is ridden at night. Ordinarily, an individual is given a citation and fined for violating this ordinance.

The officers decided to stop Defendant and advise him of the ordinance. Officer Fitzpatrick drove the squad car across Broadway and next to Defendant and asked him to stop, which Defendant did. Officer Fitzpatrick then asked Defendant to raise his hands and move toward the officers, and Defendant complied. As Defendant was walking, Officer Gregory asked him who owned the bicycle. Defendant said that it belonged to his boss. Officer Gregory asked who Defendant's boss was, and Defendant stalled his answer with a drawn-out "ahh" before saying he was not sure of his boss's name. Defendant then walked to the squad car and placed his hands on the hood. Officer Fitzpatrick asked Defendant if there was anything in his pockets that could harm the officers. Defendant shrugged his shoulders and said he did not know. Officer Fitzpatrick reached across Defendant and pat-searched his waist

---

[1]The Honorable Susan R. Nelson, United States Magistrate Judge for the District of Minnesota.

[2]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

area, checking for guns or weapons for officer safety. He then frisked Defendant's right front pants pocket, felt a pistol, and said "gun" to advise Officer Gregory of the weapon's existence. Officer Fitzpatrick removed the gun from Defendant's pocket. The officers handcuffed Defendant, placed him in the squad car, and transported him to jail.

On the basis of these facts, a grand jury returned an indictment charging Banks with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Banks moved to suppress the handgun, arguing that it was discovered as the result of an unlawful search and seizure. The magistrate judge held a hearing on the matter and recommended denying the motion to suppress. The district court held a second suppression hearing on the matter and denied the motion to suppress.

At trial, Banks refused to stipulate to the fact that he had prior felony convictions and moved to exclude the names of the prior convictions.[3] He attempted to limit the government's proof to the fact of a conviction punishable by a term of imprisonment exceeding one year. The district court denied the motion, stating that the government could not meet its burden of proof without the names of the prior felonies because certain felonies cannot be used to support a felon-in-possession charge. The district court also considered the marginal prejudice that Banks would suffer by having the names of his convictions admitted.

In February 2008, a jury found Banks guilty as charged, and, in July 2008, the district court sentenced Banks to 27 months' imprisonment. This appeal follows.

---

[3]Banks had been convicted in 1994 of fifth-degree possession of crack cocaine and in 1996 of being a felon in possession of a firearm.

DISCUSSION

## I.    The district court did not err by denying Banks's motion to suppress.

Banks argues first that his "seizure for a petty misdemeanor bicycle equipment violation was unreasonable under the Fourth Amendment." Banks also argues that, even if his seizure was legal, the officers did not have reasonable suspicion to conduct the pat-down search, which resulted in the recovery of a firearm. "We review the district court's factual determinations for clear error and the denial of a motion to suppress de novo." *United States v. Green*, 275 F.3d 694, 698 (8th Cir. 2001).

### A.    *Terry* stop

A police officer may stop and briefly question a person if the officer has a reasonable, articulable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). When a person commits a crime in the presence of the officer, that conduct gives the officer probable cause—a higher standard than reasonable, articulable suspicion—to seize the person. *See e.g.*, *United States v. Lewis*, 183 F.3d 791, 794 (8th Cir. 1999) (describing the rule as "well-established"); *United States v. Beardslee*, 609 F.2d 914, 917-18 (8th Cir. 1979) (noting that an officer had probable cause to arrest after the defendant pointed a firearm at another officer).

Here, the testimony of the officers, which the district court credited, indicated that Banks was riding his bicycle at night without a headlight. This is a petty misdemeanor. *See* Minn. Stat. § 169.222, subd. 6 ("No person shall operate a bicycle at nighttime unless the bicycle or its operator is equipped with a lamp. . . ."). Thus, the officers actually witnessed Banks riding a bicycle without a light, which is more than sufficient to establish reasonable, articulable suspicion of criminal activity. Although we acknowledge that an officer may have probable cause to arrest when a person commits a crime in his presence, *see Lewis*, 183 F.3d at 794, we need not

decide that the officers here had probable cause. Because the officers saw Banks violating the bicycle-equipment statute, they had, at the very least, the authority to stop him to advise him of the violation. Accordingly, we conclude that the officers lawfully stopped Banks in accordance with *Terry*.

Banks argues that Minnesota law does not authorize custodial arrests for the bicycle-equipment offense here. Even were we inclined to agree with that interpretation of Minnesota law, it would not change the result because the officers could have made a *Terry* stop even if Minnesota law had not authorized a custodial arrest. *See, e.g.*, *Virginia v. Moore*, 128 S. Ct. 1598, 1607 (2008) (concluding that state restrictions do not alter the Fourth Amendment's protections); *United States v. Bell*, 54 F.3d 502, 504 (8th Cir. 1995) (same). And, in any event, Banks's argument fails to recognize the distinction between a *Terry* stop and an arrest. *See United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006) (noting distinction between an investigatory detention and an arrest).

B.      Expansion of the *Terry* stop

Because the officers possessed reasonable, articulable suspicion of criminal activity to justify an investigative stop, the next issue is whether the officers improperly expanded the scope of the stop by asking Banks questions and conducting a pat-down search. This issue raises two issues, which we address in turn.

First, Banks argues that the officer's instruction to "stop, raise [his] hands and approach" were "inconsistent with a bicycle equipment stop and investigation." We disagree.

After making an otherwise lawful *Terry* stop, an officer may conduct an investigation "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20; *United States v. Bloomfield*, 40

F.3d 910, 915 (8th Cir. 1994). In conducting this investigation, an officer may engage in brief questioning on matters even unrelated to the original offense if the initial detention is not prolonged by the questions. *See United States v. Olivera-Mendez*, 484 F.3d 505, 510-511 (8th Cir. 2007). And when a suspect's response to an investigatory question raises suspicion unrelated to the original offense, the officer may expand his inquiry to satisfy the suspicion. *See United States v. Johnson*, 58 F.3d 356, 357 (8th Cir. 1995). When evaluating whether such reasonable suspicion exists, "we look to the totality of the circumstances, in light of the officer's experience." *United States v. Hanlon*, 401 F.3d 926, 929 (8th Cir. 2005) (quotation omitted).

Here, the totality of the circumstances show that the officers' requests were reasonably related in scope to the bicycle-equipment violation, and Banks's conduct heightened the officers' reasonable suspicion that he was engaged in criminal activity that was more serious than a bicycle-equipment violation. Banks cites no authority (and we have found none) to support the proposition that officers impermissibly expand the scope of a *Terry* stop by asking the suspect to stop and approach the officers. This leaves the officers' request that Banks raise his hands. We decline to say that the officers, who saw Banks commit a crime on a deserted street in the early hours of the morning, unlawfully expanded the scope of their investigation by asking him to raise his hands as he approached them.

Banks's second argument regarding the expansion of the stop claims that the record does not support the district court's conclusion that the officers had a reasonable, articulable fear that he was armed and dangerous. Accordingly, Banks contends, the pat-down search was unlawful. We disagree.

An officer may frisk a suspect for the protection of himself or others nearby to discover weapons if "he has a reasonable, articulable suspicion that the [suspect] may be armed and presently dangerous." *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002) (citing *Terry*, 392 U.S. at 30). "Courts are required to apply an

objective test to resolve the question whether reasonable, articulable suspicion justified a protective search." *Id.* Under this objective test the "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

Here, there are several factors that indicate that a reasonable officer would conclude that Banks was armed and dangerous. Most critically, before actually searching Banks, one of the officers asked him if there was anything in his pockets that would hurt the officer. Banks shrugged his shoulders and said that he did not know. This response would lead an objective officer to suspect that Banks could be armed and presently dangerous. Moreover, Banks was riding a bicycle in a deserted area of Minneapolis late at night. *See United States v. Menard*, 95 F.3d 9, 11-12 (8th Cir. 1996) (stating that late-night encounters on deserted roadways tend to support the necessity of pat-down searches for officer safety). And Banks's delayed, strange response to the officers' questions about the bicycle's owner further would lead an objective officer to suspect that the bicycle had been stolen. *Cf. United States v. Rowland*, 341 F.3d 774, 784 (8th Cir. 2003) (stating that an officer may infer that a vehicle may be stolen from occupants' inability to prove ownership of the vehicle). Once the officers had reason to suspect that the bicycle was stolen, it is not inconceivable that the thief possessed a weapon. *See Hanlon*, 401 F.3d at 929-30 (stating that officers may reasonably suspect that thieves have weapons).

Taken together, these facts left the officers with a reasonable and particularized suspicion that "criminal activity may be afoot" and that Banks "may be armed and presently dangerous." *Terry*, 392 U.S. at 30. Accordingly, the officers' protective frisk of Banks did not violate the Fourth Amendment. And the district court did not err by refusing to suppress the handgun discovered in Banks's pocket.

**II. The district court did not abuse its discretion by denying Banks's motion to exclude the names of his prior felony convictions.**

Banks contends finally that the district court improperly denied his motion to exclude the names of his prior felony convictions. We review a district court's evidentiary rulings for an abuse of discretion. *See United States v. Claxton*, 276 F.3d 420, 422 (8th Cir. 2002).

Specifically, Banks argues that the offense of felon in possession of a firearm "does not require proof of the name and nature of the felony and [that information] is therefore irrelevant under Fed. R. Evid. 401." Banks also contends that the "introduction of the name and nature of the prior felonies was unduly prejudicial under Fed. R. Evid. 403." We address each argument in turn.

A. Relevance

We conclude that Banks's relevance argument fails. Relevant evidence is evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Banks was charged with being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), which makes it unlawful for "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." But 18 U.S.C. § 921(a)(20) excludes from the definition of a "crime punishable by imprisonment for a term exceeding one year" certain crimes, including "antitrust violations, unfair trade practices, restraints of trade . . . or . . . any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." The government needed to prove, therefore, that Banks's prior crimes triggered the conviction as a felon in possession of a firearm.

B.     Unfair prejudice

Banks's argument that the unfair prejudice associated with the names of his prior convictions outweighed their probative value also fails.  Fed. R. Evid. 403 affords a district court discretion to exclude evidence when "its probative value is substantially outweighed by the danger of unfair prejudice."  When balancing the prejudicial effect and probative value under rule 403, "we give great deference to the district court's ruling."  *United States v. Johnson*, 463 F.3d 803, 809 (8th Cir. 2006).

In denying Banks's motion, the district court stated:

The issue is a 403 issue.  The issue is whether the relevance of the names of the crimes -- whether that probative value is substantially outweighed by the other 403 factors, including the danger of unfair prejudice. Obviously, I understand what the prejudice here is to Mr. Banks.  The concern that the jury will use propensity reasoning against him having heard that he has been convicted of particular crimes, they will conclude he is a bad man and they will convict him for that reason.

…

Secondly is that we're talking here about marginal prejudice.  In other words, the jury is going to know – it's clear under *United States v. Jones*, the Eighth Circuit case, that the jury can at least hear that there are two prior felonies.  So at that point they are going to know that . . . Mr. Banks has been convicted of two prior felonies.  So we're talking about the marginal prejudice of them knowing what the felonies were for.  I agree that there is some there.  I am not denying it.  But at the same time the government has to prove not only that he has been convicted of crimes that are punishable by imprisonment for more than one year but particular crimes that are punishable by imprisonment for a term exceeding one year.  The nature of the crime under 18 U.S.C. [§] 921(a)(20) is a necessary element.  I can't keep the government from proving that.

In light of the district court's reasoned analysis and the significant deference we afford a district court in conducting the rule 403 balancing, we decline to say that the district court abused its discretion.  Further, the district court gave the jury a limiting instruction, which stated that the jury may use the evidence of the prior felonies only for purpose of determining whether the government met its burden of proof.

## CONCLUSION

For the foregoing reasons, we affirm.

_____