17-1598-cv
Messina v. Comm'r of Soc. Sec. Admin.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of September, two thousand eighteen.

PRESENT:   GERARD E. LYNCH
                    CHRISTOPHER F. DRONEY,
                              *Circuit Judges,*
                    WILLIAM K. SESSIONS III,*

                    *District Judge.*

_____

JOSEPH J. MESSINA, JR.,

                    *Plaintiff-Appellant*,

            v.                                                          17-1598-cv

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                    *Defendant-Appellee*.

_____

FOR PLAINTIFF-APPELLANT:          Joseph J. Messina, Jr., pro se, Windsor Locks, CT.

---

* Judge William K. Sessions III, of the United States District Court for the District of Vermont, sitting by designation.

1

FOR DEFENDANT-APPELLEE: ANDREEA LECHLEITNER, Special Assistant United States Attorney (Stephen P. Conte, Special Assistant United States Attorney, *on the brief*), *for* John H. Durham, United States Attorney for the District of Connecticut, New Haven, CT.

Appeal from a February 10, 2017, judgment of the United States District Court for the District of Connecticut (Bryant, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** with instruction to **REMAND** the matter to the Commissioner for further consideration in light of this summary order.

Appellant Joseph Messina, proceeding pro se, sought review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB"). He appeals the district court's grant of judgment to the Commissioner. On appeal, he challenges the district court's determination that there was substantial evidence to support the Administrative Law Judge's ("ALJ") conclusion that despite his injuries, he had the residual functional capacity to perform light work, such as accounting. Specifically, he argues that the ALJ gave insufficient weight to the opinions of his treating physicians, failed to consider certain evidence, and failed to order a consultative examination. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal and

2

recite only those facts necessary to our conclusion.

Messina seeks benefits for the period between May 10, 2008 (the date of his injury) and December 31, 2008 (the date he was last insured). Messina's health difficulties began on May 10, 2008, when he was in a serious automobile accident. He was airlifted by a helicopter to Hartford Hospital and treated for back and shoulder injuries, along with broken ribs. He was discharged on May 13, 2008.[1] On July 1, 2008, he was in a motorcycle accident, sustaining several broken bones.

On July 16, 2008, Messina saw Dr. Patel, a physician and pain management specialist, regarding his back pain. Dr. Patel's treatment records indicate back pain in varying degrees of severity over the course of Patel's treatment of Messina. For example, on October 30, 2008, Patel assigned Messina a "Karnofsky Patient Performance Rating" score of 90 out of 100, meaning "Able to carry on normal activity; minor signs or symptoms of disease." AR 246.[2] During a visit in November 2008, Patel assigned Messina a score of 80 out of 100, indicating "[n]ormal activity with effort; some signs or symptoms of disease."[3] AR 233–34. At that time, Messina was being prescribed Vicoden, and reported that his back pain was 10 out of 10 when walking, and 7 out of 10 when in bed.

---

[1] On October 22, 2008, he underwent shoulder surgery. On October 28, 2008, he reported to doctors that the surgery was successful, and the shoulder pain was gone. His shoulder injury is not a subject of this appeal.

[2] Citations to the administrative record are abbreviated as "AR ___."

[3] While such scores could appear to support a conclusion that Messina was able to function normally at that point, the ALJ and agency physicians did not rely on these scores, and information regarding the methodology behind, and significance of, these scores is absent from the record.

Additionally, Dr. Patel performed two steroid injections on Messina's back, on November 4, 2008 and November 18, 2008.

On December 5, 2008, Messina saw Dr. Fignar, his primary care physician. He continued to complain of "low back pain worse with activity and relieved at rest." AR 374. Dr. Fignar told him to "[a]void activities which put excessive strain on the low back such as . . . sitting for prolonged periods of time." *Id.* Dr. Fignar also prescribed Messina Vicodin. AR 374.

On December 12, 2008, Messina saw Dr. Druckemiller, a neurosurgeon, as a result of a referral by Dr. Fignar. In a letter to Dr. Fignar, Dr. Druckemiller indicated that after the car accident in May,

> [Messina] had significant problems with his shoulders, had surgery. He had back and left leg pain. Pain radiated down the leg to the foot. Over time symptoms have somewhat improved and he has noted only pain to the knee area in addition to his back pain. He tends to have more difficulty standing than sitting.

AR 340.

Dr. Druckemiller also indicated that Messina has "symptoms consistent with radiculopathy that's partially cleared." *Id.* X-rays and a MR scan showed degenerative changes and stenosis in his back as well as a disc herniation. According to Druckemiller, Messina "will start a back exercise program and moderate weight reduction. If he fails to improve surgery might become a consideration. It would have to include fusion, given the appearance of his scan." AR 341.

On December 5, 2008, Messina saw Dr. Fignar again. Dr. Fignar again advised Messina to avoid "sitting for prolonged periods of time." AR 376. The treatment notes indicate that Messina continued to receive a prescription for Vicodin. Messina visited Dr. Fignar yet again on December 16, 2008, and Dr. Fignar repeated his advice. The records of the December 16, 2008, visit are the final records for treatment during the relevant time period.

As of October 2, 2009, Dr. Fignar was still advising Messina not to sit for prolonged periods of time and prescribing him opioid pain killers (now Oxycontin). Messina began seeing Dr. Bash, an orthopedic surgeon, on June 15, 2011, due to a referral from Dr. Fignar. According to Dr. Bash, Messina reported "a significant reduction in his quality of life and [an] inability to perform activities of daily living" since the automobile accident. AR. 483. His pain level was never less than 7, and often 10 out of 10. Messina requested surgery, but Dr. Bash recommended that another MRI be performed first. According to Dr. Bash, if surgery were performed, the "goal . . . would be to reduce his severe pain to a more livable state," although even with surgery, "[h]e will not have complete relief of his symptoms with respect to his back pain." AR 484. Eventually on December 5, 2011, Dr. Bash performed back surgery on Messina, and Messina reported significant improvement in his pain level thereafter.

On February 14, 2012, Messina filed his disability claim. On September 6, 2012, Dr. Golkar, an internal medicine physician and SSA medical consultant, reviewed

5

Messina's records, and concluded that between May and December 31, 2008, Messina would have been able to do light work. Dr. Golkar concluded that as of December 31, 2008, Messina would have been able to sit for about six hours out of an eight-hour workday. In the section of the form that asked him to explain the facts/evidence that supports his conclusion, Dr. Golkar wrote only: "BACK PAIN DDD BILAT .SHOULDER PAIN." AR. 54. Presumably based on his conclusion that Messina could have sat for six hours per workday, Dr. Golkar concluded that he could work as an accountant, and therefore was not disabled. Dr. Golkar never performed a physical examination of Messina.

Dr. Bash filled out a similar form. He estimated that during the relevant time period, Messina would have been able to sit only for about 30 minutes at a time, for a total of between one and three hours in an eight-hour work day.

After Messina requested reconsideration of Dr. Golkar's assessment, his records were reviewed by Dr. Kuslis, an internal medicine physician and SSA medical consultant. She also stated that during the relevant time period, Messina could sit for six out of eight hours per day, and explained that conclusion as follows: "BACK PAIN DDD BILAT. SHOULDER PAIN." AR 64. She based her conclusion—at least in part—on an incorrect reading of Dr. Druckemiller's December 2008 evaluation. According to Dr. Kuslis, Dr. Druckemiller reported that in December 2008, Messina was improving and had "pain mainly in knee area." AR 66. In fact, Dr. Druckemiller's report stated that the knee pain was "in addition to [Messina's] back pain." AR 340. Additionally, in reaching her

6

conclusion, it does not appear that Dr. Kuslis considered Dr. Bash's contrary report, or that Dr. Bash eventually performed back surgery on Messina.

The ALJ found that Messina was not disabled during the relevant time period, concluding that Messina maintained sufficient "residual functional capacity" ("RFC") to perform light work, such as accounting (a field in which he was trained and had experience). *See* 20 C.F.R. § 404.1545. In ruling that Messina did have the RFC to perform light work, the ALJ disagreed with Dr. Bash's contrary conclusion, assigned Dr. Kuslis's opinion "significant weight," but did not mention Dr. Golkar's consulting opinion. AR 18. Messina then filed an administrative appeal in the United States District Court for the District of Connecticut. *See* 42 U.S.C. § 405(g). The court granted the Commissioner's motion for judgment on the pleadings.

When the district court upholds a benefits determination by the Commissioner, we conduct a *de novo* review of the administrative record "to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (quoting *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)). The substantial evidence standard means that "once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted).

Upon such review, we conclude that the district court erred in its conclusion that the

ALJ correctly applied the "treating physician rule." *See* 20 C.F.R. § 404.1527(c)(2).

Because Dr. Bash treated Messina, his opinion that Messina could have sat for only one to three hours during a work-day is subject to the "treating physician rule." *Zabala*, 595 F.3d at 409 ("[The physician] treated Petitioner, and the ALJ's consideration of his opinions was therefore subject to the rule."). Under the treating physician rule, "[t]he ALJ [is] required either to give [the treating physician's] opinions controlling weight or to provide good reasons for discounting them." *Id.* (citing 20 C.F.R. § 404.1527([c])(2)). Indeed, 20 C.F.R. § 404.1527(c)(2) provides that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion." When the ALJ fails to provide a good reason for not giving the treating physician's opinion "controlling weight," remand is required unless adherence to the rule could have only lead to the same conclusion. *Zabala*, 595 F.3d at 409. That Dr. Bash did not treat Messina in 2008, at the time of his injury, does not significantly alter the analysis. "[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence." *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003) (internal quotation marks omitted).

The ALJ here did not provide a "good reason" for failing to give Dr. Bash's opinion

8

controlling weight, and instead weighing Dr. Kuslis's opinion more heavily.[4] If Dr. Bash's opinion were to be credited, Messina would have lacked the RFC to perform work as an accountant, as such work requires the ability to sit more than one to three hours during an eight-hour work day. And, because Dr. Bash was Messina's treating physician, "[t]he ALJ was required either to give [Dr. Bash's] opinions controlling weight or to provide good reasons for discounting them." *Zabala*, 595 F.3d at 409. For these reasons, we conclude that the ALJ did not give "controlling weight" to Dr. Bash's opinion and, additionally, failed to provide a "good reason" for discounting that opinion.

The ALJ's discussion of the weight to give to Dr. Bash's testimony is limited to a single paragraph. He provided two reasons for assigning little weight to Dr. Bash's opinion that during the relevant time period, Messina could have only sat for one to three hours in an eight hour work day: (1) "Notably, Dr. Bash opined that the claimant could occasionally lift or carry up to 20 pounds," and (2) "Dr. Bash noted that the claimant was not using the cane for ambulation." AR 17. The fact that Messina could occasionally lift 20 pounds and did not use a cane does not undermine Dr. Bash's unrelated conclusion that Messina could not sit for more than one to three hours during an 8-hour work day. Indeed, Dr. Bash's

---

[4] The weight the ALJ assigned to Dr. Kuslis's report is problematic for an additional reason. As explained above, Dr. Kuslis's opinion regarding Messina's RFC was based—at least in part—upon an incorrect reading of Dr. Druckemiller's December 12, 2008 report. 20 C.F.R. § 416.927(c)(3) provides that "because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." Dr. Kuslis's misreading of Dr. Druckemiller's report does not constitute a valid "supporting explanation[]." *Id.*

opinion is consistent with Dr. Fignar's recommendation that Messina not sit for long periods of time, and with Messina's prescription of opioid pain medications for over a year.

Additionally, if the ALJ found Dr. Bash's report unclear or had questions about the bases for Dr. Bash's conclusions, he had an affirmative duty to seek such additional information from Dr. Bash.[5] Indeed, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Even if the treating physician's "clinical findings [are] inadequate, it [is] the ALJ's duty to seek additional information from [the treating physician] *sua sponte*." *Id.* (third alteration in original) (citation omitted). Additionally, "if an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." *Id.* (citation omitted). This affirmative duty exists even where the applicant is represented by counsel. *Id.*

For these reasons, we conclude that the ALJ's assessment did not comply with the treating physician rule. This is not a case "[w]here application of the [treating physician rule] could lead to only one conclusion," i.e., that the claimant was not disabled, obviating

---

[5] Messina also argues that the ALJ should have ordered a consultative examination to determine his RFC. **[Blue 8]** Consultative examinations are ordered on a case-by-case basis when the evidence is inconsistent or insufficient to make a disability determination. 20 C.F.R. §§ 404.1519-404.1519a. We need not reach this issue and note it only to say that this was another option available to the ALJ when determining the RFC of Messina, given the sparse records and inconsistencies in the SSA consultative reports.

the need for remand. *Zabala*, 595 F.3d at 409 (first alteration in original) (citation omitted). Messina reported that his pain was 10 out of 10 when walking and 7 out of 10 while lying down, was prescribed opioid prescription pain medicine for a prolonged period of time, was advised not to sit down for long periods of time, and eventually had back surgery. Accordingly, the matter is remanded to the SSA for proper application of the treating physician rule.

We have considered the remainder of Messina's arguments, and find them without merit. For the foregoing reasons, we **VACATE** the judgment of the district court with instructions to **REMAND** the matter to the Commissioner for further consideration in light of this order.

<div style="margin-left: 40%;">

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

</div>

11